Submitted on briefs July 6, affirmed November 7, 1923.

## LAHEY v. LAHEY.

(219 Pac. 807.)

**Equity—Decree Annulling a Marriage may be Vacated During the Term at Which It was Made.**

1. A decree annulling a marriage is within the rule that judgments and decrees remain under the control of the court which gave them throughout the term at which they were made and entered of record, during which time they may be vacated for insufficiency of pleading.

**Marriage—Duty of the District Attorney to Defend Against Collusion or Fraud in Suit to Annul Marriage.**

2. In a suit to annul a marriage contract, it is the duty of the district attorney under Section 1020, Or. L., to defend against collusion or fraud, and to control the proceedings on the part of the defendant where he neglects or fails to defend, the state being deemed a party to the marriage relation, and its policy to preserve the married status.

**Marriage—Allegation that Plaintiff Attempted to Enter into a "Marriage" Contract Insufficient to Obtain Decree Annulling Marriage.**

3. In a suit to annul plaintiff's marriage to defendant, on the grounds that plaintiff's former husband was living at the time of marriage with the defendant, an allegation that plaintiff attempted to enter into a marriage contract with defendant was insufficient;

---

2. Collusion as bar to decree of divorce, see notes in 2 A. L. R. 699; 60 L. R. A. 267, 305; 51 L. R. A. (N. S.) 535; L. R. A. 1917B, 460.

an attempt to marry falling short of the consummated act, in view of Sections 501, 502, 504, 2073, 9721, paragraph 1, Or. L., all of which relate to marriages and not "attempted marriages."

**Marriage—Bigamous Marriage not Annulled in the Absence of an Adequate Pleading.**

4. The court cannot annul a bigamous marriage in the absence of an adequate pleading showing that plaintiff was married to defendant, and that when so married she had a living husband.

From Multnomah: ROBERT G. MORROW, Judge.

In Banc.

On May 19, 1919, a decree was granted to plaintiff in the Circuit Court for Multnomah County, Oregon, purporting to annul her marriage relation with the defendant John E. Lahey. On June 6, 1919, during the term of court at which that decree was granted, Walter H. Evans, as district attorney for Multnomah County, Oregon, by George C. Graham, deputy, moved the court to set aside the decree on account of the failure of the complaint to state a cause of suit, and for the further reason that the record failed to disclose evidence that R. J. White, former husband of plaintiff, was alive at the time of her marriage to the defendant in this suit, and, generally, for lack of testimony to support the decree and findings of fact. On June 10, 1919, the court made an order setting aside the decree theretofore granted, and gave the state until June 20th thereafter to file its answer, and the plaintiff until June 27th to reply thereto. After the joinder of issues, testimony being adduced upon the part of the plaintiff and the State of Oregon respectively, the court, on December 2, 1919, made and entered the following order:

"Be it remembered that heretofore, the findings and decree in this cause having been set aside, and

4. Unlawful, invalid or bigamous marriages as void or voidable, see note in L. R. A. 1916C, 690, 711.

the state of Oregon having answered, the matter was submitted to the court on behalf of the plaintiff and the state of Oregon on the testimony of many witnesses and numerous exhibits. Having considered the cause, and the argument of counsel, it is now ordered and decreed that the defendant go hence without date; that plaintiff take nothing by her suit herein, and that no allowance be made to anybody for costs or disbursements.

"ROBERT G. MORROW, Judge."

The appellant now says there is manifest error on the face of the record in the following particular, to wit:

"That the court erred in setting aside the decree of annulment."

AFFIRMED.

For appellant there was a brief over the name of *Mr. Morris A. Goldstein.*

For respondent the State of Oregon, there was a brief over the names of *Mr. Stanley Myers,* District Attorney, *Mr. J. L. Hammersley, Mr. George C. Graham* and *Mr. Wm. H. Hallam,* Deputies District Attorney.

BROWN, J.—The point urged by plaintiff upon appeal is that of alleged error because of the court's order vacating its decree.

The decree in the case at bar was rendered, entered and set aside at the same term of the Circuit Court. The decree vacated was based upon a complaint that was insufficient to sustain a decree annulling a bigamous marriage.

1. It is a well-established legal principle that judgments and decrees remain under the control of the court which gave them, throughout the

term at which they are made and entered of record. This rule is familiar law in Oregon, and the authorities are collected in a statement of that principle by Mr. Justice BURNETT, as follows:

"It is well settled that any order or determination of a court, although it be a final judgment or decree, may be altered, modified or reversed by the court making it, at any time during the term at which it is made: *Deering & Co.* v. *Quivey* (*Deering* v. *Creighton*), 26 Or. 556 (38 Pac. 710); *Ayers* v. *Lund,* 49 Or. 303 (86 Pac. 806, 124 Am. St. Rep. 1046); *Zelig* v. *Blue Point Oyster Co.,* 61 Or. 535 (113 Pac. 852, 122 Pac. 756); *First Christian Church* v. *Robb,* 69 Or. 283 (138 Pac. 856). The reason is based on the old common-law fiction that the whole term is considered as being but one period of time, all parts of which are ever present before the presiding judge, who makes of it but one transaction, with the condition that when it has lapsed, either by adjournment *sine die* or by operation of law, the whole matter has passed from the bosom of the court and beyond its control. This much is true only of final judgments or decrees fully disposing of the whole litigation." *Anderson* v. *Anderson,* 89 Or. 654, 657 (175 Pac. 287).

There is an unbroken line of authorities to this effect. The law is well settled in both federal and state courts.

2. The plaintiff challenges the authority of the district attorney to defend on any ground other than that of fraud or collusion.

"In any suit for the dissolution of the marriage contract, or to have the same declared void, the state is to be deemed a party defendant, and the party plaintiff in such suit shall cause the summons to be served upon the district attorney of the district within which the suit is commenced, or his duly appointed deputy, at least ten days before the term at which the defendant is required to appear and answer.

It shall be the duty of such district attorney, so far as may be necessary to prevent fraud or collusion in such suit, to control the proceedings on the part of the defense, and, in case the defendant does not appear therein or defend against the same in good faith, to make a defense therein on behalf of the state * * ." Section 1020, Or. L.

The language of the statute is plain, and the duty of the district attorney is manifest.

In *Keeley* v. *Keeley,* 97 Or. 596, 599 (192 Pac. 490), Mr. Justice BENSON, in expressing the opinion of the court, wrote the following relative to the duty of the district attorney:

"It will therefore be observed that in every suit for divorce in which the marriage defendant makes default, it is the imperative duty of the district attorney to make a defense."

To like effect is *Smythe* v. *Smythe,* 80 Or. 150 (149 Pac. 516, 156 Pac. 785, Ann. Cas. 1918D, 1094).

Under the provisions of Section 1020, Or. L., quoted above, it is always the duty of the district attorney to defend against either collusion or fraud in a divorce suit, and, to that extent, to control the proceedings on the part of the defendant, and whenever the defendant makes default or neglects to defend in good faith against the charge contained in the complaint for a divorce, the district attorney should always make a defense on behalf of the State of Oregon. The reason of the statute is based on the theory that a divorce suit is a triangular proceeding. Under our law, the plaintiff, the defendant and the State of Oregon are all deemed parties. It is the policy of the state to preserve the married status. In carrying out such policy, the statute expressly empowers and directs the district attorney to defend

on behalf of the state, in all such cases as the one at bar.

3. This proceeding was instituted for the purpose of annulling an "attempt" at marriage between the plaintiff and the defendant herein.

Our statute provides that—

"A husband or wife may maintain a suit against the other for dissolution of the marriage contract, or to have the same declared void, as provided in this chapter." Section 501, Or. L.

It is next provided that—

"All marriages which are prohibited by law * * on account of either of them having a former husband or wife then living, * * shall, if solemnized within this state, be absolutely void." Section 502, Or. L.

Now, passing to Section 504, Or. L., it is enacted that—

"A marriage may be declared void from the beginning, at the suit of either party, for any of the causes specified in Section 502, and whether so declared or not shall be deemed and held to be void in any action, suit or proceeding whatever in which the same may come in question. * * "

Section 9721, paragraph 1, Or. L., prohibits marriage "when either party thereto had a wife or husband living at the time of such marriage."

"If any person having a former husband or wife living shall marry another person, * * such person shall be deemed guilty of polygamy." Section 2073, Or. L.

The provisions of the foregoing statute include a bigamous marriage.

Polygamy has been defined by a standard authority as—

"the having of a plurality of wives or husbands at the same time; usually, the marriage of a man to more than one woman, or the practice of having several wives at the same time." Webster's New International Dictionary.

Again: "The offense of having at one time two husbands or wives, the one *de jure* and the other *de facto,* is often or commonly termed 'bigamy,' though equally well designated by the broader word 'polygamy.'" 1 Bishop on Marriage, Divorce and Separation, § 717.

"Strictly speaking, bigamy means 'twice married,' as its derivation shows." Anderson's Law Dictionary.

From Keezer on Marriage and Divorce (2 ed.), page 206, we take the following definition of marriage:

"Stephen defines the word 'marries' as meaning going through a form of marriage which the law of the place where such form is used recognizes as binding, whether the parties are, by that law, competent to contract marriage or not, and although by their fraud the form employed may, apart from the bigamy, have been insufficient to constitute a binding marriage. * * It is enough that the accused obtained a license to marry and the service was performed by a minister."

·The marriage relation between the plaintiff and Lahey is the basis of this suit. Without a marriage of the parties, there is nothing to nullify: 2 Bishop, Marriage and Divorce, § 732. The plaintiff fails to allege that she ever did marry John E. Lahey, from whom she seeks a divorce. Her pleading alleges an "attempt" to marry him. An "attempt" to marry falls short of the consummated act of marrying.

"Attempt: * * an ineffectual act; * * an act tending toward the accomplishment of a purpose

which exceeds a mere intent or design, but falls short
of an execution of it." 6 C. J. 547, 548.

She bases her complaint upon an "attempted mar-
riage." She should have alleged a marriage with
Lahey, or facts showing a marriage, although such
marriage is bigamous and void. The statutes here-
inbefore cited all refer to "marriages," and not mere
"attempts." In paragraph 2 of her complaint, she
alleges her marriage to White, the former husband.
In paragraph 3 she avers:

"That thereafter, believing that her husband
(White) was dead (plaintiff) attempted to enter into
a marriage contract with the defendant herein on the
6th day of June, 1918."

In paragraph 5 she assumes, without alleging, a
"proposed marriage," and in her prayer she asks
that her "proposed marriage be annulled."

4. Neither the lower court nor this court is em-
powered to annul a bigamous or a polygamous mar-
riage in the absence of an adequate pleading. Plain-
tiff alleges that she was married to Robert J. White
about the —— day of April, 1916, but nowhere does
it appear from her complaint that while White was
still living and her undivorced husband she married
the defendant, John E. Lahey. According to her tes-
timony, she is seeking relief from a bigamous mar-
riage, but she cannot obtain relief from her relation
with John E. Lahey on that ground without showing
in her complaint that she was married to him, and
that both Robert J. White and John E. Lahey were
her husbands at one and the same time. Without
two marriages and two husbands, there would be no
bigamous marriage. Her testimony tends to show
that when she married White he was an employee of

a powder plant at James Island, British Columbia; that he later wrote her that he was going to New York in the Du Pont Powder Plant; that soon thereafter she read in a newspaper an account of an explosion at that plant, and that the name of Robert J. White appeared in the list of the dead. She made no inquiry concerning the matter, but, believing him to have been killed in the explosion, she married John E. Lahey within a very few months. Later, she was advised by the government officials that Robert J. White had been killed in action in France, where he had gone with the Canadian Expeditionary Forces.

As we have seen, an essential element in the maintenance of this suit is plaintiff's marriage with the defendant, which she fails to aver. If the plaintiff married a second husband while the first husband was alive and undivorced, her second marriage, under the statute, is void. There are no rights of third persons involved herein. For the effect of a void marriage, see a valuable note by Freeman, 96 Am. St. Rep. 267–277.

This case is affirmed, without costs.     AFFIRMED.

Mr. Justice BURNETT took no part in the consideration of this case.