174    COURT OF ERRORS AND APPEALS.

Quemahoning Coal Co. v. San. Earth. Spec. Co.    88 *N. J. L.*

QUEMAHONING COAL COMPANY, PLAINTIFF-APPELLANT,
v. SANITARY EARTHENWARE SPECIALTY COMPANY,
A CORPORATION, DEFENDANT-RESPONDENT.

Submitted July 6, 1915—Decided November 15, 1915.

By written contract defendant agreed to purchase from plaintiff a quantity of a certain kind of coal got from certain mines and known by the trade name of "Ralphton Smokeless Coal." *Held*, that there was no implied warranty as to the quality of the coal. Section 15, subdivision 4, of the "Sales act" (*Comp. Stat., p.* 4647), applies. *Ivans* v. *Lawry*, 67 *N. J. L.* 153, approved and applied.

On appeal from the Supreme Court.

For the appellant, *Vroom, Dickinson & Bodine.*

For the respondent, *James J. McGoogan.*

The opinion of the court was delivered by

WALKER, CHANCELLOR.  By a written contract between the parties the defendant agreed to purchase from the plaintiff certain carloads of "Ralphton Smokeless Coal," and the latter sued the former in the Supreme Court for a certain amount due for shipments of such coal, which defendant received and part of which it used, tendering back the unused part.  The defence was that plaintiff represented that the coal could be used with good results in firing defendant's pottery kilns, and that defendant, relying upon such representations, used the coal in firing certain of its kilns, and that, by reason of the poor quality of the coal so used, pottery ware in the kilns was damaged.  Defendant counter-claimed for damages to the ware in the kilns fired with the coal mentioned, and for expenses incurred in refiring the kilns with other coal, and offered to set off its damages against the amount due plaintiff, and demanded judgment for such balance as might be found due to it.  The jury rendered a verdict of no cause of action, and the plaintiff appealed to this court.

The testimony showed that the coal shipped was a certain kind of coal got from certain mines. It was known by the trade name of "Ralphton Smokeless Coal," and was the kind of coal contracted to be bought and sold in this case.

The sole question to be determined upon this appeal is whether, when coal is sold by a written contract under a specific trade name, as "Ralphton Smokeless Coal," there is an implied warranty as to quality because the purpose for which it was to be used was communicated by the buyer to the seller.

We regard the case of *Ivans* v. *Laury*, 67 *N. J. L.* 153, as controlling the case at bar. In that case, Mr. Justice Gummere, now Chief Justice, speaking for the Supreme Court, said (at *p.* 155):

"The cement which was the subject-matter of the sale, in the present case, was purchased by its known designation, *i. e.*, as 'Atlas-Portland Cement,' and, consequently, there was no implied warranty of its quality."

The case of Ivans *v.* Laury was decided in 1901. Afterwards, and in the year 1907, the legislature passed "An act concerning the sale of goods and to make uniform the law relating thereto." *Comp. Stat., p.* 4647. This statute, known as the "Sales act," does not change the law from that enunciated in Ivans *v.* Laury. Section 15 of that act reads as follows:

"Subject to the provisions of this act and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows."

Then follows certain subdivisions, one of which applies, as will be hereafter shown.

The learned trial judge charged that there was testimony in the case to the effect that the agent of the plaintiff was familiar with, and informed of, the purpose for which the coal was to be used, but very properly instructed the jury not to consider the representations respecting the coal and its quality made by the agent of the plaintiff, as the written agreement between the parties alone could speak as to the contract made by them; but he went on and charged that the law

implied a warranty from that state of facts, and, further, that he could see no reason why an implied warranty should not be inserted in the written paper where the warranty itself was not incorporated in ·it. ·To this the plaintiff took exception.

The learned trial judge had in mind the first subdivision of section 15 of the Sales act, which reads:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose," as he expressly mentioned it in his charge to the jury.

This subdivision, however, apparently contemplates the case of goods other than those sold under a patent or other trade name. Certainly there was no reliance on the seller's "skill or judgment" in this case.

Subdivision 4 of section 15 of the Sales act, which reads as follows:

"(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose," was the law applicable to the contract before the court, and should have been given controlling effect by the trial judge. In charging, in effect, that the case came under subdivision 1 instead of subdivision 4, he erred; and for this error, besides the charge that the law implied a warranty from the facts of the case, the judgment must be reversed to the end that a *venire de novo* may be awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, Vredenburgh, White, Terhune, Heppenheimer, Williams, Taylor, JJ. 16.