EMPIRE CREAM SEPARATOR COMPANY, Appellant, *v.* JOSEPH QUINN, Respondent.

Fourth Department, July 2, 1918.

Sale — contract to purchase milking outfit under trade name — implied warranty — Personal Property Law, section 96, construed —" merchantable " defined.

A contract with a manufacturer for the purchase of an " Empire Mechanical Milker " consisting of " Empire Mechanical Milker Units " and " Empire Mechanical Milker Pumping Outfit " constitutes a " contract to sell or a sale of a specified article under its patent or other trade name," within the meaning of subdivision 4 of section 96 of the Personal Property Law, and there is no implied warranty of its fitness for any particular purpose.

Subdivision 2 of section 96 of the Personal Property Law, providing that " where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality," has no application to the sale of a specified article by its trade name, which falls under subdivision 4 of said section.

The word " merchantable " as used in subdivision 2 of section 96 of the Personal Property Law has been defined as meaning " at least a medium quality or goodness."

APPEAL by the plaintiff, Empire Cream Separator Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Oneida on the 7th day of February, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on or about the 16th day of January, 1917, denying plaintiff's motion for a new trial made upon the minutes.

*Louis P. Fuess* and *Russel W. Leary* [*L. P. & H. L. Fuess,* attorneys], for the appellant.

*Warnick J. Kernan* [*Kernan & Kernan,* attorneys], for the respondent.

FOOTE, J.:

Defendant, a farmer, purchased of plaintiff, the manufacturer, a mechanical cow-milking apparatus consisting of one No. 2 pumping outfit and three single mechanical milker units with fifty-pound pails, for $320. These were shipped by plaintiff from its factory in Bloomfield, N. J., and received by defendant at his farm and installed and put into use by

defendant in milking his dairy of twenty cows. It proved unsatisfactory to defendant after a trial of about ten days, whereupon, after considerable correspondence, defendant notified plaintiff that he would refuse to keep and pay for the milker and requested shipping directions for its return.

This action is to recover the purchase price. The jury has found that defendant was justified in his refusal and that there was a breach of the implied warranty that the apparatus was reasonably fit for the particular purpose for which defendant purchased it. The jury were instructed that there was such an implied warranty. This instruction, I think, was error.

Before the purchase defendant had seen and examined one of plaintiff's catalogues which contained a complete description of the mechanical milker which it manufactured. He had also seen and examined the catalogues of two other rival manufacturers. He communicated with plaintiff and plaintiff sent one of its traveling salesmen to see him and while there a contract was made on one of plaintiff's printed forms by which he agreed to purchase of plaintiff and sell in the territory adjoining his residence the " Empire Mechanical Milker " of plaintiff's manufacture upon certain terms and conditions stated for a period of one year. These Empire mechanical milkers are described in detail in this contract as consisting of: (1) " Empire Mechanical Milker Units; " and (2) " Empire Mechanical Milker Pumping Outfit." By this contract defendant was to receive a certain discount from plaintiff's list prices. On the same day he signed and delivered to plaintiff's representative a written order for one of these outfits intended for his own use on a printed blank form furnished by plaintiff, by which he requested plaintiff to ship to him at once, terms as per contract, one No. 2 pump and three single units with fifty-pound pails. In connection with this contract and order the agent gave defendant a writing to the effect that defendant was not bound by the terms of the contract " to purchase any further milker, or to spend any time in trying to sell milkers, unless he so desires."

It was the claim of plaintiff's counsel at the trial and is his claim here that defendant's purchase was of a specified article under its trade name, and that, hence, there was no implied warranty as to its fitness for any particular purpose.

Taking the contract and the order together, as in legal effect one instrument, being made at the same time and between the same parties, I think the order must be construed to be for one of plaintiff's No. 2 Empire mechanical milker pumping outfits and for three of plaintiff's Empire mechanical single milker units with fifty-pound pails. Had the order itself been in this form, it can hardly be questioned that there would be no implied warranty as to its fitness for any particular purpose since it would be for a specified article under its trade name. Such has been the rule from the earliest decisions and it is now embodied in subdivision 4 of section 96 of the Personal Property Law (Consol. Laws, chap. 41 [Laws of 1909, chap. 45], as added by Laws of 1911, chap. 571) as follows: " In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." Plaintiff's mechanical milking machine has been on the market for many years and is known and sold under its trade name. It was fully described in plaintiff's catalogue which defendant examined before his purchase, and he knew that he was ordering a particular kind and make of milking machine, which after investigating other makes and after talking with plaintiff's agent he concluded was, at the price, the one best suited for his use, or at least the one that he preferred to purchase. He did not expect that plaintiff would manufacture a special machine for his use or that he would receive anything different from the standard form of milker which plaintiff was furnishing to other farmers. He alleges in his answer that there was an express warranty by plaintiff that the machine " would milk defendant's cows satisfactorily without injuring, producing as much milk as is possible for the best hand milker to produce when operated according to the instructions furnished therewith, and having a capacity of ten to fifteen cows per hour." The trial court held that no express warranty had been proved and so withdrew that question from the jury. He also alleges that plaintiff made false representations to the same effect, but the court held that there was no proof of this. The court instructed the jury in effect that there was an implied warranty that the machine

was reasonably fit for the purpose for which defendant bought it. This was error since he should have instructed the jury as matter of law that there was no implied warranty of reasonable fitness for defendant's purpose. Subdivision 4 of section 96 of the Personal Property Law above quoted is an enactment of the common-law rule.

There was no proof at the trial of any specific defect in the machine or any of its parts, nor that it differed in any respect from the standard form of machine described in plaintiff's catalogue, or that it was made from defective material or that there were latent defects which affected its operation. The machine did milk the cows and did work as it was planned to work; the only complaint was that defendant could not make it milk one cow as quickly as he could milk the cow by hand, and that the cows did not give as much milk as when milked by hand, and that it raised ridges on their teats.

It was plaintiff's contention that these troubles did not arise from any defect in the machine but were due either to defendant's having an engine of too little power and, during part of the time, a temporary pulley of his own construction which was unfit, or to his lack of skill and experience in operating the machine, or his failure to use it a sufficient length of time so that the cows became accustomed to it.

Plaintiff called two farmers of the vicinity who owned and had used Empire mechanical milkers, who testified that their machines operated satisfactorily, producing as much or more milk than by hand-milking, in less time, and that the cows' teats were not injured.

Professor Mechem in his work on Sales (Vol. 2, § 1349) formulates the rule as follows: " The implied warranty of fitness is not to be extended to cases which lack the necessary conditions upon which it depends. The essence of the rule is, that the contract is executory; that the particular article is not designated by the buyer; that only his need is known; that he does not undertake or is not able to determine what will best supply his need, and, therefore, necessarily, leaves the seller to make the determination and take the risk; and if these elements are wanting, the rule does not apply. If, therefore, a known, described and defined article is agreed

upon, and that known, described or defined article is furnished, there is no implied warranty of fitness, even though the seller is the manufacturer and the buyer disclosed to him the purpose for which the article was purchased."

This doctrine is supported by the following cases: *Davis Calyx Drill Co.* v. *Mallory* (137 Fed. Rep. 332), where Judge SANBORN in the Circuit Court of Appeals states and cites the authorities for another rule which would apply in this case if there was an implied warranty, namely: " An implied warranty of the fitness of a machine to do a particular work does not include a warranty that it will do the work as rapidly or economically as some other specified machine." (*La Crosse Plow Co.* v. *Brooks*, 142 Wis. 640.) And see, also, cases cited in the comprehensive notes to the case of *Springfield Shingle Co.* v. *Edgecomb Mill Co.* (52 Wash. 620; 35 L. R. A. [N. S.] 258).

Some of the English cases are not entirely in harmony with our own. (*Gillespie Bros. & Co.* v. *Cheney, Eggar & Co.*, L. R. [1896] 2 Q. B. Div. 59; *Bristol Tramways, etc., Carriage Co., Ltd.*, v. *Fiat Motors, Ltd.*, L. R. [1910] 2 K. B. Div. 831.)

But defendant's counsel contends that without regard to whether or not the purchase was by a trade name, there was an implied warranty that the milker would answer to the description and be merchantable and free from any remarkable defect. For this he relies upon subdivision 2 of section 96 of the Personal Property Law (as added by Laws of 1911, chap. 571), which provides as follows: " 2. Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be of merchantable quality." Of this it is sufficient to say that no such question was left to the jury, nor did defendant's counsel request it to be submitted.

The word " merchantable " as used in this connection is defined in *Howard* v. *Hoey* (23 Wend. 350) as meaning " at least of medium quality or goodness." But I think subdivision 2 has no application to a case of the sale of a specified article by its trade name which falls under subdivision 4.

If I am right in the foregoing, then plaintiff's request to so charge the jury should have been granted, and it is not neces-

sary to examine the other alleged errors pointed out in appellant's brief. But as an express warranty was alleged in defendant's answer, as well as fraudulent representations to induce the sale, one or both of which defendant may be able to establish upon another trial, I think we should not dismiss the complaint but should direct a new trial.

The judgment and order must be reversed and a new trial ordered, with costs to the appellant to abide the event.

All concurred; HUBBS, J., not sitting.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.