[No. 21289.   Department One.   February 26, 1928.]

LUTHER T. WISDOM, *Respondent,* v. MORRIS HARDWARE
COMPANY, *Appellant.*[1]

[1]Reported in 274 Pac. 1050.

*Crollard & O'Connor* and *Turner, Nuzum & Nuzum,* for appellant.

*A. N. Corbin,* for respondent.

MITCHELL, C. J.—In the year 1926, Luther T. Wisdom, P. C. Burkey, L. H. Wilson, S. O. Rue and E. M. Phillips were engaged in growing apples, each on his separate tract of land in Chelan county. Their orchards joined each other, only that two of them were separated from the other three by a public highway. About the latter part of May, that year, each of them purchased from the Morris Hardware Company an article spoken of as Corona Scale-Proof Spray, and used it according to directions given by the hardware company in spraying apple trees, with the result that the apple crop was damaged. Each of the four, other than Wisdom, assigned his cause of action to Wisdom, upon which, together with his own original cause of action, he brought suit against the Morris Hardware Company for damages.

In each of the five causes of action, it was alleged that the article was wholly unknown to the purchaser, and that it was purchased and used in reliance upon the judgment and representation of the defendant to the effect that it was safe to be used and was efficient for the purpose of exterminating and controlling rosy aphis, codling moth, eggs and other pests infesting the orchard. The case was tried to a jury, which returned a verdict for the plaintiff on each cause of action. The defendant has appealed from a judgment on the verdict.

That the evidence was sufficient to show that the apples were seriously damaged by the use of the spray, and that the spray was mixed and used according to directions, there appears to be no serious question. Nor can there be any question about the amount

of damages awarded on each cause of action. The principal question in the case relates to the liability of the appellant.

At the close of respondent's case, the appellant challenged the sufficiency of the evidence to go to the jury as to each of the four assigned causes of action, expressing some doubt at that time as to respondent's own original cause of action; at the close of all the evidence on both sides, the appellant renewed the motion as to each of the four assigned causes of action; after the verdict, appellant filed a motion for judgment notwithstanding the verdict as to each of the five causes of action. All of the motions were in all respects denied. These rulings are assigned as errors and we think may be considered together.

The appellant was, and for years had been, engaged in the mercantile business at Wenatchee, and sold spray mixtures, among other things. One of its principal officers or agents, Mr. Morris, and the respondent were well acquainted with each other. On behalf of the respondents, the evidence showed substantially that he went into appellant's place of business and told Mr. Morris the condition of his orchard, that he and his neighbors up there had lots of aphis and that they were "seeking for something to get away with them, that they were bad;" that Mr. Morris said, "This oil would clean them up and clean up other pests with it, clean up the codling moth and their eggs;" that he then told Mr. Morris, "that if that stuff was all right that he probably could dispose of more of it up there, or some such words;" that Mr. Morris said it should be mixed one gallon to one hundred gallons of water, and gave him some of the literature gotten out by the manufacturers of the article, showing that the mixture was a patented article and giving directions how to

mix it, and containing testimonials from those supposed to have used it.

All five of the purchasers were experienced orchardists in that locality, and each testified in detail how he mixed it according to the directions of both Mr. Morris and the printed directions and also as to his manner of spraying trees with the mixture. Within a few days after spraying the trees, it was noticed that the apples were damaged. The leaves turned yellow and appeared to be more or less parched, some of them dropping from the trees. Upon reporting the damage to Mr. Morris, he visited the orchards; and in the presence of all the purchasers, he admitted that the apples had been damaged. The respondent testified that, while they were all together on that occasion, in confirmation of his report to his neighbors concerning representations made by Mr. Morris, he repeated or said to them

" . . . that, when Mr. Morris sold us this oil spray, he said that it would clean up all aphis and codling moth and their eggs, and would do no damage to our fruit, and to use one gallon of scale-proof to one hundred gallons of water,"

and that Mr. Morris admitted to them that was what he told Mr. Wisdom. He further testified that, relying on the representations of Mr. Morris, he bought and used the Corona scale-proof oil. That he told his neighbors of the representations by Mr. Morris and they testified that, in purchasing and using the article, they relied on those representations by Mr. Morris. No one of them had ever heard of it before, and at least one or two of the purchasers now knowing the name of it and of Mr. Morris' representations, in ordering it from the appellant did so by its trade name. On behalf of the appellant, Mr. Morris denied making the representations attributed to him, and testified that he, at all times, said the preparation was new to

him and that he knew nothing about it except what was said in the literature furnished by the manufacturers, and that he called their attention to a customer to whom he had lately sold it in that community. This conflict in the evidence was, of course, for the jury, and in view of the verdict we must accept the facts as testified to on behalf of the respondent.

Two portions of our uniform sales act, Laws of 1925, Ex. Ses., p. 361, § 15; Rem. 1927 Sup., § 5836-15, are cited by appellant. They are as follows:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. . . .

"(4) In the case of a contract to sell or a sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose."

It is argued that subd. (4) governs this case, because the article sold was a patented article or had a trade name, that it was sold as such and hence there was no warranty or liability on the part of the appellant. Counsel cite a large number of cases from other states discussing a similar statute of those states. Some of such cases are *Gearing v. Berkson,* 223 Mass. 257, 111 N. E. 785; *Quemahoning Coal Co. v. Sanitary Earthenware Specialty Co.,* 88 N. J. Law 174, 95 Atl. 986; *Matteson v. Lagace,* 36 R. I. 223, 89 Atl. 713; *Northwestern Blaugas Co. v. Guild,* 169 Wis. 98, 171 N. W. 662; *Stoehrer & Pratt Dodgem Corporation v. Greenburg,* 250 Mass. 550, 146 N. E. 34; *Empire Cream Separator Co. v. Quinn,* 184 App. Div. 302, 171 N. Y. Supp. 413. Those cases, however, need not be further mentioned.

If the premises in appellant's argument in this respect be admitted, its conclusion unavoidably follows. But the facts in this case are not of that kind. These purchasers knew nothing about the article until they were persuaded of its supposed merits by the representations of the appellant, upon which they relied. It was the article appellant had told them about that they wanted and ordered. True, they had the literature given to them by the appellant, and one or two of them ordered it by its patent or trade name, but it is entirely clear from the evidence in this case that the name was used by them only for the purpose of designating or identifying the article they wanted, being induced thereto by the representations and judgment of the appellant, upon which they relied. Had these purchasers gotten the information upon which they relied from some other source than the appellant and then ordered the goods from the appellant by its patent or trade name, the statute referred to would be applicable and the appellant would not be liable. Here, however, there was quite enough evidence to satisfy the jury, not simply that these buyers made known to the appellant the purpose for which they wanted and purchased the article and that they relied on the appellant's judgment, but also that the appellant, through its agent, expressly stated that the article would, with safety, accomplish their purpose.

Two of the purchasers, Wilson and Phillips, did not deal directly with the appellant in buying the article, but ordered it through the Wenatchee Produce Company, who paid the appellant; and the argument is made that, under the rule that a warranty on the sale of personalty does not run with the property, the appellant is not liable for damages suffered by Wilson and Phillips. But under the testimony in this case, it appears that the produce company did not buy the

article and then sell it to Wilson and Phillips, but because of the fact that it was helping them in a financial way to procure a part of their supplies, that it acted for them and ordered the goods for them. The produce company simply acted as their agent in getting the article, and the essential thing is that, in using it, Wilson and Phillips acted upon the representations of appellant as it, through its agent, had advertised and conveyed the same through Wisdom, who had discussed the matter with appellant on behalf of himself and his neighbors. The rulings complained of on these motions of the appellant were correct in all respects, in our opinion.

The next assignment is that the court erred in instructing the jury that they might consider damage to the trees as alleged in the complaint, "for the reason that the same was abandoned by all the parties in their testimony at the trial." It appears to us that counsel have a misconception of this matter as the court intended and the jury manifestly understood it. There was some statement in the complaint as to each cause of action of damage to the trees, and in the testimony this was referred to by describing injury to the foliage and, in some instances, injury to the smaller twigs of the trees, not, however, as affecting or damaging the trees permanently, but only as it related to the crop of apples that year. At the trial of the case in 1927, as counsel say, the parties admitted there was no permanent damage, or waived any claim of that sort, or damage to apple crops except for that one year of 1926.

In instructing the jury, the court gave an outline of the pleadings, but gave no instruction upon the subject of permanent injury to the trees or upon any subject or measure of damages except the one relating to the injury to the apples in the year 1926, and in

effect told them that the measure of damages would be the difference between the market value of the crop, as it was after the injury, compared with what it would have been had the burning not occurred from the application of Corona scale-proof oil, if they found there was any burning by the application of it. The whole record carries out this idea, and we are satisfied that the jury were not misled in the matter. There is no claim that the amounts awarded by the jury exceed the amount of damages to that year's crop, under the evidence.

. The refusal of the court to give a requested instruction embracing the provision of subd. (4) of Rem. 1927 Sup., § 5836-15, being part of the uniform sales act, covering a contract to sell or a sale of a specified article under its patent or other trade name, is assigned as error. But, as above stated, that portion of the statute was not applicable here. The respondent had to prove his causes of action, as alleged, or the verdict should go against him, and the jury were so instructed in effect.

■ Appellant requested an instruction to the effect that, if the jury found that the only transaction between Burkey and Rue and the hardware company was that Burkey and Rue ordered the article by one Roundy, a drayman, designating it by its trade name or patent name, and that no inquiry was made by the purchasers or their agent from any representative or agent of the Morris Hardware Company as to the method of applying the oil spray, or the strength at which it should be used, and that the defendant did not volunteer any such information or purport to instruct Burkey or Rue or their agent, the drayman, and further found that the Morris Hardware Company actually furnished the kind of oil spray that was ordered—that then there was no warranty on the

part of the Morris Hardware Company as to the characteristics of the article furnished. The refusal of the court to give the instruction is assigned as error. The requested instruction was properly refused, in our opinion, as not being applicable here. Wisdom ordered the article for himself, Burkey and Rue all at the same time. There seems to be no dispute concerning this. It was not ordered in its patent or trade name in the sense contemplated in the instruction or the statute, as heretofore shown. Neither Burkey nor Rue knew anything about it or its name, except that it was the article spoken of and represented by the Morris Hardware Company. The drayman, Roundy, had nothing to do with it, except as a public drayman to transport the article to the orchards of the purchasers.

The motion for a new trial presented nothing different from the things already mentioned herein, as it has been argued in this court.

Affirmed.

FULLERTON, TOLMAN, HOLCOMB, and BEALS, JJ., concur.