## CRAIG v. WILLIAMS.
### Civ. A. No. 11865.

United States District Court
D. New Jersey.
May 22, 1951.

Abraham Alboum, Newark, N. J., for plaintiff.

Herrigel, Bolan & Vieser, Newark, N. J., William L. Vieser, Newark, N. J., for defendant.

MODARELLI, District Judge.

### Findings of Fact

1. Plaintiff brings this action for damages to his trailer and personal property therein. Plaintiff purchased a Nelson Trailer Dolly (trade mark registered) from defendant on August 19, 1948. The trailer was attached to plaintiff's 1936 Buick automobile and 1941 Roycroft Trailer by the defendant. Plaintiff alleges that as a result of defendant's negligent installation and breach of warranty, the trailer became detached from the dolly while in operation and he was damaged thereby.

2. Plaintiff is a citizen and resident of New York. Defendant is a citizen and resident of New Jersey.

3. The defendant is a dealer in trailers and dollies. He sold a Nelson Trailer Dolly to the plaintiff. The dolly was attached to the plaintiff's automobile and trailer. While the trailer was in operation on Route 29 and descending the west slope of Jugtown Mountain in Bethlehem Township, one of the steepest and most dangerous hills in New Jersey, the right rear wheel suddenly came off the automobile causing the trailer body to become detached from the chassis, as a result of which the trailer body was demolished and its contents of personal property was thrown out and damaged. The accident happened near a culvert on the right side of the highway.

4. The wheel was produced in court and disclosed that the lug holes were rounded from use and age, whereas the lugs are hexagonal shape. The lugs were still on the drum after the wheel came off.

5. At the time of the accident, the automobile and trailer was operated by Ira Williams who was not produced in court. Said Williams had had little, if any, experience in operating an automobile and trailer. He was an unlicensed driver. After the accident, Ira Williams was arraigned before the local magistrate by a state trooper. He entered a plea of guilty to driving at the rate of forty (40) miles per hour down the steep grade, and to being an unlicensed driver.

6. On the day in question, plaintiff left her home in Brooklyn, New York, enroute to Cleveland, Ohio, to attend a Revival Meeting which was to start on the evening of August 20, 1948. Her party consisted of approximately ten (10) people, and they were driving in two automobiles and the trailer.

7. The Buick automobile was towing the Roycroft Trailer which was connected by an Atwood Coupler attached to the trailer, which coupler rested on an Atwood Steel Ball. The excessive weight of the trailer resting on the rear of the automobile caused some difficulty in driving the vehicle, some loss of control over the front wheels, and caused the trailer to weave and sway. The defendant expressly warranted that these difficulties would be eliminated by the use of the Nelson Dolly, and they were.

8. The Nelson Dolly is a two-wheeled device with a platform on top, designed to connect a trailer with the automobile towing it. The platform has a steel two-inch Atwood Ball upon which the Atwood Couplet of the trailer was designed to rest. The front of the dolly has an Atwood Coupler designed to be attached to a steel two-inch Atwood Ball on the rear of the towing automobile. These balls are of cast steel and are not machine tooled. They are of a standard size and manufacture throughout the trailer industry. There was evidence that there was a variation of 25/1000ths of an inch in the circumference of one of the balls, but that did not affect the operation of the coupler. The coupler attached to the trailer had no bolt or pin connected with it nor with its safety catch when the dolly was installed. They are not required for safe installation or operation of the dolly and trailer.

9. The dolly was installed and attached to the trailer and Buick automobile by the defendant after its purchase by the plaintiff. It was found, upon installation, that the steel ball attached to the Buick automobile was too high for proper operation, and at the defendant's suggestion the auto-

mobile was taken to a machine shop recommended by the defendant, and the bar to which the steel ball was attached was shortened so that the ball was eighteen (18) inches from the ground, the height recommended by the manufacturer of the Nelson Dolly. The automobile was then brought back to the defendant's place of business and the dolly installed. There was no negligence in the installation of the dolly by the defendant.

10. The Atwood Coupler of the type attached to the trailer and the steel ball attached to the Nelson Dolly are manufactured so that they will become disengaged in the event of extraordinary stress, strain or pressure. The purpose of this is to prevent the towing automobile from being overturned should the trailer overturn for any reason. After the accident the dolly was still attached to the automobile, and the chassis of the trailer was still attached to the dolly.

11. The negotiations for the purchase of the Nelson Dolly were conducted by Philip Craig, the son of the plaintiff. The said Philip Craig had a financial interest in the automobile, trailer, dolly, personal property, and provisions which were placed in the trailer.

12. The dolly, which was the subject matter of the sale in this case, was sold and purchased by its trade name, "Nelson Dolly."

13. This case is replete with the type of contradictory testimony by witnesses which is commonplace in automobile accident cases. The contradictions in this case were so flagrant that the court often wondered whether the witnesses were talking about the same automobile, trailer, and accident. These contradictions were not confined to witnesses for the plaintiff as against witnesses for the defendant, but as between witnesses on the same side. This factor made it very difficult to find the facts.

### Conclusions of Law

1. There were no implied warranties as to fitness for any particular purpose because the dolly was sold and purchased under a trade name. N.J.R.S. 46:30–21(4),

N.J.S.A. Quemahoning Coal Co. v. Sanitary Earthenware Specialty Co., 88 N.J.I. 174, 95 A. 986.

2. There were no breaches of express warranties.

3. There was no culpable negligence on the part of the defendant which was the proximate cause of the plaintiff's damages.

4. This court has jurisdiction of the action by reason of the diversity of citizenship of the parties.

5. Plaintiff is not entitled to recover.

An order may be submitted in conformity with the findings and conclusions herein expressed.