GERRITT DE ZEEUW, Appellee, v. FOX CHEMICAL COMPANY, Appellant.

**SALES: Statement of Opinion.** The naked statement that an article, when fed to animals, *"would improve their growth and physical condition,"* does not, as a matter of law, constitute a warranty, in the absence of a plea that the language was so intended.

*Appeal from Cherokee District Court.*—WILLIAM HUTCHINSON, Judge.

NOVEMBER 1, 1920.

IN substance, this was a suit to recover on an alleged warranty. The trial court declined to direct a verdict for defendant, and, on submission to the jury, it returned a verdict for plaintiff. Defendant appeals.—*Reversed.*

*J. A. Miller* and *Sullivan & Sullivan,* for appellant.

*Klay & Klay* and *Herrick & Herrick,* for appellee.

SALINGER, J.—I. The petition alleges that plaintiff, in June, 1918, owned 100 hogs, weighing about 35 pounds each; that defendant corporation, through its agent, E. P. Quirin, stated to the plaintiff that his hogs were troubled with worms, and that, if he would feed defendant's worm powder, it would improve the growth and physical condition of said hogs. Terming this an oral warranty, the petition further alleges that plaintiff, relying on the said war-

ranty, purchased from the defendant 50 pounds of the worm powder, and fed the same to his hogs, as he was instructed and directed by the said E. P. Quirin. Next, it is alleged that the oral warranty was broken as follows: Defendant had carelessly and negligently used poison in said worm powder, to such extent that said hogs immediately began to die, after eating same, and that, in all, 60 of said hogs died, within 4 or 5 days; and that, instead of improving the physical condition of the hogs by the use of the worm powder, it killed the same.

Now, while it is expressly alleged that the breach of this claimed warranty consisted of administering a deadly poison to the hogs, such poisoning would be no breach of the alleged warranty. Such poisoning, no doubt, would constitute a cause of action, but it is no breach of the warranty, so called, that is asserted in this case. This charge of poisoning is, however, immediately followed by an allegation that, instead of an improvement in the physical condition of the hogs through use of this powder, it killed the hogs. And we construe the petition to charge: First, that defendant is liable for carelessly mixing poison into the worm powder in lethal doses; and, second, that the breach of warranty, so called, consists of a failure of the powder to improve the physical condition of the hogs.

II. The charge of the negligent admixture of poison is not only utterly unsupported by any evidence, but it is shown affirmatively and overwhelmingly that the powder contained nothing poisonous, except in medicinal quantities, and that the powder did not cause the death of the hogs by poison.

III. This leaves the allegation that the agent stated the hogs were troubled with worms, and that, if plaintiff would feed them the worm powder to be furnished by defendant, such powder would improve the growth and physical condition of said hogs.

The theory of the appellee is stated thus:

"Here is a case where a witness says he was about to buy a hog medicine which he had used successfully for a

number of years in the past; this fact was known to the agent of defendant; it is unreasonable to believe a total stranger could sell plaintiff an article without, at least, convincing him that he had the remedy;" that, no matter what may be disputed, the jury could find, on the testimony of appellee, "the agent told plaintiff that, if he could get a crack at the pigs, he could turn them out all right." Appellee argues that this constitutes "sufficient facts to go to the jury, and for them to decide whether the statement so made was a warranty, on which the appellee had a right to rely;" and that, the jury having answered this question in the affirmative, that finding of fact is beyond interference here. This is followed with the related argument that, ordinarily, the question whether there is a warranty is for the jury, under proper instructions. For this a number of our decisions are cited, and we have no quarrel with it; nor do we dispute that, ordinarily, it is not for the court to say "which words are or represent a warranty, but that this must be considered from the nature of the transaction and the acts of the parties, and submitted to the jury under proper instructions."

But if this means that the question of whether there has been a warranty is always for the jury, we cannot agree. Whether there is a warranty, in common with thousands of other questions, is *ordinarily* a jury question. But the things that are ordinarily jury questions may become law questions. That is always so where facts are not in dispute, and reasonable men can find but one set of facts, or draw but one set of deductions from the facts. We are of opinion that here is such a case. We find nothing that pleads a warranty, or that would make a jury question of whether such plea, if made, was sustained. The most that appears is the claim and opinion of one who desired to sell worm powders that its use would be beneficial to certain animals that were then ill, or not thriving.

If, on this, it may go to the jury whether there has been a warranty, then the same is true if a physician expressed an opinion that a certain prescription which he

was willing to give would benefit one who was then ill, and it proved that the medicine did not improve his condition. Or, if a lawyer expressed the opinion that he could win a suit, and that he thought certain defenses or tactics would bring about that result, and if, despite the use of these tactics, the suit failed, it would be for a jury to say whether, the suit not having been won, there was or was not a breach of warranty.

We decline to hold this to be the state of the law, either on what is a warranty or on what makes a jury question of alleged warranty. There is neither plea nor proof of a warranty, and verdict should have been directed for defendant. See *McDonald Mfg. Co. v. Thomas*, 53 Iowa 558, at 561; *Ellis v. Barkley*, 160 Iowa 658, at 661; *Davis v. Berkheimer*, 152 Iowa 270, at 272, and cases cited; and *Schlichting v. Rowell*, 140 Iowa 731, at 735.

IV. This disposition of the case, of course, makes it unnecessary to pass on whether the loss suffered by plaintiff was due to his own negligence and want of care, because of alleged failure to carry out the instructions given by the defendant, and to pass upon complaints as to instructions given. Of course, it makes it unnecessary to consider the contention of appellant that there was objectionable argument of counsel. See *Davis v. Hansen*, 187 Iowa 583.—*Reversed.*

WEAVER, C. J., EVANS and PRESTON, JJ., concur.