Motion to vacate judgment denied September 9, 1930; argued
on merits April 17; affirmed July 8, 1931.

## BLANCHARD ET AL. *v.* MAKINSTER ET AL.
(290 P. 1098, 1 P. (2d) 583)

*James W. Mott,* of Salem, for appellants.
*Botts & Winslow,* of Tillamook, for respondents.

COSHOW, C. J. This cause is here on a motion for an order requiring the clerk of Tillamook county to certify to this court certain documents employed by defendants and appellants in support of a motion to vacate the judgment from which defendant appeals.

The motion to set aside and vacate said judgment is not based on a claim that the judgment was rendered without jurisdiction. Appellants' claim is that the court rendered said judgment under a mistake of fact. It is alleged in the affidavits supporting said motion

for said order that all of the parties, including the judge who presided at the trial, labored under the same mistake.

The judgment was rendered in the circuit court on the 7th day of June, 1929. The notice of appeal was duly and timely given. The motion to vacate the judgment was filed the latter part of October, 1929. The judgment of the circuit court was rendered at the May term, 1929, thereof. The next term of said circuit court began the first Monday in October, 1929. The appeal was perfected and the transcript filed in this court before the motion to vacate the judgment was presented to the circuit court.

The circuit court had, therefore, lost all power to correct or to set aside or vacate said judgment, except upon the ground of jurisdiction: *Deering v. Quivey,* 26 Or. 556, 559 (38 P. 710) ; *State v. Ryan,* 114 Or. 91, 97 (234 P. 811) ; *Lahey v. Lahey,* 109 Or. 146, 149 (219 P. 807). Since the jurisdiction of the court or its authority to enter the judgment is not questioned, defendant is not entitled to the order for which he petitions. Conceding that the judgment is the result of a mistake of fact, that mistake can not be remedied in the manner defendant has pursued. The circuit court did not err by denying the motion to vacate the judgment, for it was without authority to allow said motion.

The motion will be denied.

McBride, J., absent.

## On the Merits

*James W. Mott,* of Salem, for appellants.

*George P. Winslow,* of Tillamook (Botts & Winslow, of Tillamook, on the brief), for respondents.

ROSSMAN, J. Both plaintiffs and the defendant Makinster are commercial fishermen who employ a type of net known as a setnet. The plaintiffs' net was forty fathoms in length and its shore end was fastened to a dolphin located upon the property of their lessor, a Mrs. Emma Holmes. A setnet is a floating web suspended vertically in the water. At its top is a line of floats called the "cork line," and along the bottom is a series of weights called the "lead line." The light cork line above and the heavy lead line below maintain the net in its vertical position in the water. The net is operated by being placed in the stream and abreast of it so that the fish, as they proceed up-stream, become "gilled" in the meshes. A dolphin or piling is not an absolute necessity for holding in position the shore end, but such an object is very convenient. The offshore end is maintained in position by an anchor. For a further description see also *Mitchell v. Curits,* 135 Or. 595 (296 P. 1078).

Inside of the mean low-water mark of Mrs. Holmes' property stood the aforementioned dolphin. The shore line of Makinster's net was fastened to this dolphin and his net was in operation when the plaintiffs secured their lease. Makinster had obtained no permission from Mrs. Holmes to use the dolphin or trespass upon her property. A few days after the plaintiffs attached their shore line to this dolphin and proceeded with the operation of their net, Makinster filed his suit and obtained a temporary injunction which required the plaintiffs to withdraw from that location. The injunction was dissolved when the evidence revealed the fact that the plaintiffs were the tenants of Emma Holmes and that the dolphin was above mean low-water mark. The final decree was likewise in favor of these plaintiffs.

■■ The first assignment of error challenges the following part of the instructions to the jury which stated the rules governing the measurement of damages:

"The precise measure of recovery upon the first element is the reasonable value of the use of the particular location for and during the time they were deprived of it for the purposes to which they had devoted it and were devoting it and intend to devote it and, of course, the value of the use of that location comprehends in it the loss of profits, if any, suffered by them, and in determining the value of such use you may consider all of the evidence as to the catch of fish before and after the fourteen day period they were deprived of it, the going prices of fish of the character taken in that particular place and during that particular time; catches of other fishermen using the same means and in the immediate vicinity, the cost of conducting operations and cost of such location by way of royalties or percentage of catch for the use of location."

Appellants' exception was thus expressed to the trial judge: "I would like to except to that part of Your Honor's instructions with reference to the measurement of damages." In *Lott v. DeLuxe Cab Co.*, 136 Or. 349 (299 P. 303), an appellant endeavored in like words to gain an exception to an instruction given by the court upon its own volition. We there expressed ourselves as follows:

"We take no cognizance of this assignment of error, for the reason that the particular objection to the instruction was not pointed out to the trial court. When exception is taken to instructions given by the court upon its own motion or at the request of the adverse party, the court must be given an opportunity to correct the error if any exists. A different rule applies to instructions which the court refused to give at the request of the party complaining."

The orderly transaction of judicial business and the demand that appeals be minimized to the smallest possible number require a litigant who is dissatisfied with the court's instructions to the jury to point out to the trial judge the errors which he believes exist. We could very well employ that rule in this case and decline to consider the present assignment of error; but the respondents' brief does not mention the insufficiency of the exception, and we ourselves did not notice it until our decision was drafted; hence, we shall state our disposition of this assignment of error.

Defendants do not contend that the foregoing instruction fails to correctly state the law recited by it, but argue that the facts developed by the evidence indicate that the profits which the plaintiffs anticipated they would have made, but for the defendants' interruption of their business, were so uncertain that they could not become a measurement for determining the value of the contested fishing location. They urge (1) that the plaintiffs' business was a new one; (2) that all fishing ventures are subject to so many contingencies and uncertainties that the likelihood of earning a profit is too speculative to permit the recovery of anticipated profits; (3) that even if the venture in which the plaintiffs were engaged was of a character in which alleged lost profits were recoverable the plaintiffs, due to alleged incompetence and lack of industry, must be denied recovery of such items of damage; and (4) that if the plaintiffs, in obedience to the writ of injunction, had not removed their net the two nets would have been directly alongside of one another and neither could have been operated profitably.

■ The defendants' implied concession that the above instruction correctly stated the law contained therein

is well warranted. *Whitehead v. Cape Henry Syndicate,* 111 Va. 193 (68 S. E. 263), which is the authority upon which the defendants principally rely, was an action upon an injunction bond by a net fisherman who had been wrongfully enjoined by the defendants in a previous suit from plying his vocation at his chosen location. In stating the rules governing the measurement of damages, the court said: "A plaintiff is entitled to recover all such damages as are the natural and proximate result of the wrongful act of which he complains. * * * Profits are not excluded from recovery because they are profits, but when excluded it is because there are no criteria by which their amount can be ascertained with reasonable certainty or definiteness. When prospective profits or gains can be so proved, and their loss is the natural and proximate result of the wrongful act complained of, they may be recovered." This court has expressed itself concerning the recovery of anticipated profits in similar language: *Martin v. Neer,* 126 Or. 345 (269 P. 342). Before turning to the evidence to determine whether the plaintiffs' claim is dependent upon so many uncertainties that it ought to be rejected, it may be well to determine what kind of uncertainty bars recovery. Uncertainty in measuring damages may come from either or both of two sources: (1) uncertainty whether the defendants' wrongful act caused the damage; and (2) uncertainty as to the amount of gain which the wrongful act prevented the plaintiff from obtaining. The authorities, especially the modern ones, adopt the principle that the rule against uncertain or contingent damages is aimed against such claims as are not shown to be the certain results of the alleged wrong, and not to such damages as are the certain results but uncertain in amount. 17 C. J. Damages, p. 756, § 90, states:

"The rule against the recovery of uncertain damages generally has been directed against uncertainty as to cause rather than uncertainty as to measure or extent. In other words, the rule against uncertain or contingent damages applies only to such damages as are not the certain results of the breach, and not to such as are the certain results but uncertain in amount." From *Eastman Kodak Co. v. Southern Photo Materials Co.*, 273 U. S. 359 (47 S. Ct. 400, 71 L. Ed. 684), we quote: "A defendant whose wrongful conduct has rendered difficult the ascertainment of the precise damages suffered by the plaintiff, is not entitled to complain that they cannot be measured with the same exactness and precision as would otherwise be possible." From *Johnston v. City of Galva*, 316 Ill. 598 (147 N. E. 453, 38 A. L. R. 1384), we quote: "The nature of the inquiry in the instant case is such that it is difficult, if not impossible, to ascertain with mathematical certainty the amount of the defendant in error's damages, but this difficulty affords no answer to a cause of action which results from a breach of duty imposed by law. The unliquidated damages growing out of the commission of a tort are seldom susceptible of exact measurement. The rule is, that while the law will not permit witnesses to speculate or conjecture as to possible or probable damages, still the best evidence which the subject will admit is receivable, and this evidence is often nothing better than the opinions of persons well informed upon the subject under investigation." In *Jacobson v. Laurel Canyon Mining Co.*, 27 Ariz. 546 (234 P. 823), the same rule was applied to an action similar to our present one wherein a temporary injunction had prohibited the plaintiff from operating his mine. The court declared: "All of the authorities, of course, agree that the victim of a wrongful injunction is en-

titled to recover the damages occasioned by the injunction. * * * It is now generally held that the uncertainty referred to is the uncertainty as to the fact of the damage and not as to its amount, and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery.'' We deem it unnecessary to cite further authorities, and proceed to a consideration of the question whether the evidence indicates that fishing with setnets in Tillamook bay is a venture of such a highly speculative nature that the law itself rules that an individual thus employed cannot prove the value of his location by showing its earning power.

■ The evidence indicated that fishermen have been engaged in commercial fishing on Tillamook bay for at least 47 years; that ordinarily 100 fishermen ply their vocations on this bay as a means of acquiring their livelihood; that in November of 1928, due to an exceptionally ''heavy run'' of chum salmon, 250 fishermen were actively engaged in commercial fishing on the bay; that in that month good fishing locations and competent fishermen were in acute demand; that the location from which the plaintiffs were ejected by a writ of injunction was well adapted for setnet fishing purposes and was considered by some as the best location on the bay; that the defendant Makinster had maintained nets at that location for three years; that in November of 1927 his net had yielded profitable catches; that during the fourteen days in which the injunction was in effect he caught at this location very large quantities of salmon; that during the fourteen-day period just mentioned the run of chum salmon reached its height and ended December 1; that other fishermen in the neighborhood of this location, using

similar equipment to that of the plaintiffs, caught large quantities of salmon during the aforementioned fourteen-day period; that at least two established fish buyers, in competition with one another, afforded an active market for the fishermen; that the price of salmon in November of 1928 was sufficient to yield a good return to commercial fishermen; and that in November of 1927 and in November of 1928 there occurred the largest runs of chum salmon that had taken place in recent years. In November of 1928, 2,303,710 chums were caught in Tillamook bay, while in November of 1927, the catch was 1,187,244. The above facts are undisputed. The defendants do not claim that the plaintiffs' equipment was defective or inadequate; nor do they contend that the price of salmon was too low to return a profit to a competent fisherman. Substantial evidence indicated that both plaintiffs are competent fishermen who have had more than ten years of experience as commercial fishermen on Tillamook bay. Opinion-evidence, received without objection, varied as to the value of plaintiffs' location for the month of November, 1928. Two witnesses estimated its value at $2,500, while a third thought it was worth $5,000. They added that the above sums represented the profit which the location would yield to a competent fisherman who applied himself industriously. The plaintiffs, as witnesses, estimated their receipts and their expenses. Evidence showed that November 4, before the run of chum salmon commenced, the plaintiffs caught in their net at this place 49 pounds of silverside salmon and nine chum salmon; November 5, when the run commenced, they caught 315 pounds of silverside salmon and 63 chum salmon; November 6, 300 pounds of silverside salmon were caught and 183 chum salmon; November 9, 185 pounds of silverside salmon and 592

chum salmon. The writ having been served on November 9, the plaintiffs desisted and did not renew their efforts until November 24.

The above being the proof, it appears to us that the plaintiffs were entitled to have their claim submitted to a jury under appropriate instructions. It will be observed that the defendants conceded their wrong, and the foregoing proof renders it certain that the plaintiffs sustained some injury by reason of the admitted wrong. Doubtless it is true, as the defendants contend, that a commercial fisherman is confronted with many hazards over which he can exercise no control; for instance, the tides, the weather, market conditions, the number of other fishermen operating in the same locality, and so forth. But no business is free from uncertainties, and if the courts are to search only for the hazards which might deprive a particular venture, whose course is interrupted by a tortious defendant, of its profits, no injured plaintiff can ever recover just relief for the damage sustained. The situation disclosed by the testimony renders applicable the principle of law to which we have already alluded; that uncertain damages are nonrecoverable only when the uncertainty is due to inability to establish with certainty the cause. The defendants particularly rely upon *Whitehead v. Cape Henry Syndicate,* 111 Va. 193, (68 S. E. 263). As we have already stated, the plaintiff in that case was an individual who had been wrongfully enjoined in a suit instituted by the defendant from proceeding further with his fishing operations and the marketing of his catches. A month before the writ of injunction issued he had embarked upon the business just mentioned. The decision does not mention his previous experience, if any. He took his fish from the water with a poundnet and apparently mar-

keted his catches in an establishment conducted by himself. Based upon evidence indicating that in this single month his venture had earned a net profit, he sought damages for the following eight months in which the injunction was in effect. This portion of the desired relief was denied. We quote:

"It is clear that the plaintiff's business, under this statement of the rule invoked, was a new and not an established business. He had only been conducting it for about one month; it had not been conducted long enough and had no such trade established as would show with reasonable certainty what its profits, if any, would be. It was a new business, whose profits depended not only upon future bargains and states of the market, but upon other contingencies, such as the run of the fish that season, and the kind and quantity caught. The profits sought to be recovered by the plaintiff seem to us, under the rule invoked as well as under the principle established by our own decisions, to depend upon to many contingencies, and are altogether too uncertain to furnish a safe guide in fixing the measure of the plaintiff's damages."

A return to the facts of our case will readily distinguish the situation which confronts us from the facts of the Virginia case. Our plaintiffs had an established market, and a fishing location which for many years had produced good yields. In the fourteen days in which Makinster was in possession of it he earned a profit. Evidence favorable to the plaintiffs indicated that each was an experienced, competent fisherman. In *Boudreaux v. Thibodeaux*, 149 La. 400 (89 So. 250), also cited by the defendants, a farmer who had been wrongfully enjoined from sowing a crop of cotton and corn sought by way of damages the profits he would have realized if he had been permitted to grow and market his crop. Recovery was denied. It is evident that a distinction exists between a demand for lost

profits on a crop that was neither seeded, harvested, nor marketed, and our present case wherein it is conceded that fish in profitable quantities were present and caught at the location from which the plaintiffs' net was wrongfully ejected.

■ The contention that the occupation of a fisherman is both uncertain and precarious, and that, therefore, his anticipated profits cannot be employed in measuring the value of his business, was repulsed by this court in *Anderson v. Columbia Contract Co.,* 94 Or. 171 (184 P. 240, 185 P. 231, 7 A. L. R. 653). We deem it unnecessary to cite other authorities to like effect because to hold that a fisherman who establishes with certainty the fact that the defendants' wrongful act interrupted his business, and with like certainty the fact that his business would have yielded a net profit, would be tantamount to legislation and would not constitute the exercise of judicial prerogatives.

The argument that if Makinster had not caused the removal of plaintiffs' net the two nets would have obstructed each other to such an extent that neither could have earned a profit, and that, hence, the instruction erred, would possibly possess merit if the uncontradicted evidence disclosed such a situation. But, to the contrary, the plaintiff Charles Jones testified that the two nets were so situated before the writ was served that Makinster's net did not interfere with the operation of plaintiffs' net. Moreover, defendants' exception was too general to preserve this point. Had they desired an instruction upon this phase of the claim the court would very likely have favored them upon request. Had it declined to do so, an exception would have properly presented the point. We are, therefore, of the opinion that this assignment of error reveals no shortcoming in the criticized instruction.

 The remaining exceptions argued in appellants brief are four in number and are predicated upon rulings made by the circuit court in the presentation of the evidence. The defendants complain because the court sustained an objection to a question which inquired of the defendant Makinster the position of his and the plaintiffs' nets, after the plaintiffs had put theirs in position about October 29. When the objection was sustained, the defendants made no offer of proof. They now argue that this evidence was admissible for the purpose of showing that on November 9 the two nets were directly alongside of one another and "corked" each other. Proceeding, they argue further that if the defendant had not caused the removal of plaintiffs' net neither could have caught any fish and that, therefore, the wrongful writ inflicted no injury upon the plaintiffs. While it is true that the objection was sustained and should have been overruled, other similar questions put to Makinster and to others of the defendants' witnesses fully developed the defendants' contention that in the early part of November the two nets were corking each other. For instance, defendants' counsel inquired of Makinster:

"Q. Well, now, on the 1st of November you were not fishing unobstructed—the plaintiffs' net was tied up to this same dolphin as yours?

"A. Well, when they were corking down there we didn't make nothing out of that lower net.

"Q. Now, Mr. Makinster, what part of that 70 pounds of silversides and 13 chums that were taken on the 1st of November were taken by this 43-fathom net tied to this dolphin, if any?

"A. Well, I doubt very much if there was any, but there might have been one or two fish, but we didn't get practically nothing out of that net while it was tied up there, for the nets were right together and anchors got tangled up in the web. There is a ground swell

comes in there and the net—you couldn't hold it—they throwed the anchors right at the net, we tangled up in the anchors, you couldn't fish, it was absolutely impossible. We was holding the net there merely because I figured it was right to hold the set.''

The witness, after amplifying the above, added that the same condition prevailed on every day of November until the writ of injunction caused the removal of the plaintiff's net. Other witnesses produced by the defendants gave like testimony and added that it was impossible for the plaintiffs to take any fish with their net while Makinster's was directly alongside; that the two nets fouled each other repeatedly from October 29 to November 9, and that while Makinster's net was in place the plaintiffs' location was worthless. We deem it evident that the action of the court in sustaining an objection to the aforementioned question did not prejudice the rights of the defendants. We have already mentioned the fact that the court's action in sustaining an objection to the question was not followed with an offer of proof. We are of the opinion that an offer of proof was necessary to assign error upon the ruling if the defendants believed that the anticipated answer would have been different from replies actually made by Makinster to the above mentioned similar question: 38 Cyc. Trial, 1329.

■ The defendants next argue that the court wrongfully sustained an objection to a question which was put to one of their witnesses, named Griffith, which inquired whether he could have caught 5,000 or 6,000 fish on the Holmes location if the net located there was being constantly corked by another net. While it is true that the court sustained a premature objection to a portion of this inquiry, nevertheless, defendants' counsel immediately reframed their question and elicited

from the witness the information that under such circumstances the net would produce "about one-third" of the normal number of fish. Apparently they were completely satisfied with the answer and pursued the matter no further. This assignment of error is devoid of merit.

There remains for disposition only exceptions that are argued in the appellants' brief. We have carefully examined both and for reasons which are indicated by our disposition of the foregoing assignments of error we find no merit in either of these assigned errors.

For the reasons above, it follows that the judgment of the circuit court must be affirmed.

BEAN, C. J., KELLY and BELT, JJ., concur.