Motion to strike bill of exceptions denied October 13, 1931; argued
at Pendleton May 2; affirmed August 1; objection to
cost bill allowed September 20, 1932

## J. A. CAMPBELL CO. *v.* CORLEY ET AL.
(3 P. (2d) 776, 13 P. (2d) 610, 14 P. (2d) 455)

*H. V. Schmalz,* of Burns, and *Richard Sleight,* of Portland, for the motion.

*Robert M. Duncan,* of Burns, and *Edward A. Boyrie,* of Portland, opposed.

BEAN, C. J. This is a motion to expunge the bill of exceptions from the record for the reason that the bill was not presented in accordance with rule No. 18 of the circuit court for Harney county, as the proposed bill of exceptions was not served upon opposing counsel, as provided by that rule, citing *Oxman v. Baker County,* 115 Or. 436, 452 (234 P. 799, 236 P. 1040), and other cases.

It appears from the briefs that judgment was entered against appellant on October 14, 1930. On December 10 of that year, notice of appeal and undertaking on appeal were served and filed. The circuit court, on different dates, made orders extending the time within which to prepare and file bill of exceptions and transcript on appeal. It is not questioned that the bill of exceptions was certified to by the trial court and filed, together with the transcript of record, within the time allowed by order of the trial court.

On January 26, 1931, the attorneys stipulated that the plaintiff have until February 1, 1931, "in which to prepare and file its bill of exceptions and transcript on appeal in the above entitled cause." Printed abstract of record was served on counsel for respondent on February 13, 1931, and filed on the 14th of that month.

There was another stipulation entered into in March, 1931, by the respective counsel, that appellant have until April 10, 1931, to prepare and serve its brief.

Counsel for appellant contend that the motion to expunge the bill of exceptions is not timely under rule No. 23 of this court. That rule provides:

"* * * All motions must be filed within ten days after a party or his attorney obtains knowledge of an alleged failure of the adverse party or his attorney to

comply with the requirements of the statute or with the rules of this court, and unless so filed all defects, except objections to the jurisdiction of the court, will be taken as waived by the moving party.'' 123 Or. 688.

Therefore, it appears that there has not been a strict compliance with the rules mentioned by either party. The motion to expunge the bill of exceptions was not filed within ten days after the attorney had knowledge of the failure to serve the bill of exceptions. It is not contended or suggested that there is any error in the bill of exceptions. No injury on account of the failure to serve the counsel for respondents with copy of the bill of exceptions is shown, except such failure. The trial court certified to the bill of exceptions and the certificate is unquestioned. The failure to serve the bill of exceptions is not jurisdictional, and the motion to expunge the bill should have been filed within ten days from the time the attorneys for respondents had knowledge thereof, in order to be considered; otherwise, it is deemed to have been waived: *State v. Adler*, 71 Or. 70 (142 P. 344); *Bird v. Mayo*, 75 Or. 101 (144 P. 574, 145 P. 13, 146 P. 475); Supreme Court Rule No. 23, 123 Or. 688.

In *Li Sai Cheuk v. Lee Lung*, 79 Or. 563 (146 P. 94, 156 P. 254), where an endorsement on the abstract of the record showed that plaintiff accepted service thereof August 12, 1914, and thereby obtained knowledge of the failure of defendant to comply with the statute or rules of the court as to the filing of a bill of exceptions, it was held that plaintiff's motion to dismiss defendant's appeal, in order to escape denial thereof, must be made within ten days of August 12, 1914.

In *Mitchell v. Coach*, 83 Or. 45 (153 P. 478, 162 P. 1058), it was held that since the filing of the under-

taking on appeal is not jurisdictional, a motion attacking it for defect in time of filing must be filed within ten days of the filing of the undertaking, as required by rule No. 23, or it is deemed waived.

In *Iltz v. Krieger,* 104 Or. 59 (202 P. 409, 206 P. 550), we find, under Supreme Court Rule No. 23, a motion to dismiss the appeal for failure of the surety on appellant's bond to justify within ten days after the notice of exceptions to his qualifications, as required by the code, will be denied, where the motion is not filed within ten days, in accordance with rule No. 23, as the default was not jurisdictional. See also *Paul v. Livestock State Bank,* 116 Or. 626 (239 P. 108, 241 P. 56).

In *Coos Bay Amusement Co. v. Am. Ry. Express Co.,* 129 Or. 216 (277 P. 107), we find the announcement that the bill of exceptions signed by the trial judge, who certified that it was presented within the time allowed, will be considered, notwithstanding a supplemental certificate to the effect that the bill of exceptions was not presented within the time required by court rule, and that no order had been made extending the time for submitting the bill of exceptions.

The learned counsel for respondents candidly state, in substance, that where something has been omitted from the bill of exceptions that does not injure the other party, a motion to expunge the bill of exceptions should perhaps not be sustained. Where the motion to expunge the bill of exceptions is filed later than permitted by rule No. 23, the matter complained of not going to the jurisdiction of the court, and it not being suggested that there is any error or defect in the bill of exceptions, we think that the same should not be expunged from the record.

The motion is, therefore, denied.

ON THE MERITS
(13 P. (2d) 610)

*Edward A. Boyrie,* of Portland, and *Robert M. Duncan,* of Burns, for appellant.

*H. V. Schmalz,* of Burns (Richard Sleight, of Portland, on the brief), for respondents.

The complaint alleges that March 19, 1930, the plaintiff, at the request of the defendants, sold and delivered to them 205 barrels and 10 sacks of flour "of the reasonable and agreed value" of $1,469.75, and that the defendants paid on account $739.75. Judgment is demanded for the balance, $730. The answer admits that the plaintiff shipped to the defendants merchandise of the value of $1,469.75, and that they paid on account $739.75, but denies all other averments of the complaint. It alleges that March 19, 1930, the defendants, who operate a bakery in Burns, Oregon, informed the plaintiff that they desired to purchase flour "for the particular purpose of making good bread and other products of that kind at their said bakery"; that subsequently the parties signed the contract mentioned in the complaint; that "plaintiff, as a part of said contract and to induce defendants to enter into the

same, warranted to defendants that the flour thereby sold by plaintiff would make good bread and other products of that kind at their said bakery''; that at the time the contract was effected the defendants' bakery possessed a favorable reputation and a large lucrative trade; that the defendants' efforts to produce good bakery products from the flour shipped to them by the plaintiff failed; that, although the plaintiff, pursuant to defendants' request, promised to show the defendants how this flour could be used to make good bread, it failed to keep its promise; that later the defendants notified the plaintiff that they would receive no more flour from the plaintiff, and would retain the unpaid balance of $739.75 ''in partial recoupment of the damage caused them by plaintiff's breach of said warranty.'' This portion of the answer concludes with the averment that the flour shipped was ''worthless and incapable of being made into good bread or other salable products.'' As a counterclaim, the answer repeats the averment just reviewed, and adds that the defendants sold a large quantity of bread and other products made from the aforemential flour with the result that their reputation as bakers was injured and they lost many customers. This portion of the answer alleges that the defendants incurred a large expense in endeavoring to bake bread out of this flour, and that they received no consideration whatever for the sums paid by them to the plaintiff. Judgment is sought for $5,000. The reply, after admitting that the defendants used a portion of the flour delivered to them by the plaintiff, that they withheld payment of $730, and that the parties signed a contract for the sale of flour, avers that the contract was signed August 25, 1929. It denies all other averments of the answer. The reply sets forth a copy of the alleged contract; it requires the

plaintiff to ship to the defendants nine carloads of flour, each containing 210 barrels, and specifies the kind and quantity as follows:

| Quan. | Size pkg. | Brand or kind |
|---|---|---|
| 500 Bbls | 98 | Craft |
| 500 Bbls | 98 | Collins Best |
| 500 Bbls | 98 | Upright |
| 390 Bbls | 98 | Silverlight |
| Bbls | 98 | Man O'War |
| Bbls | 100 per cent | Whole Wheat |

The contract provides that it "can not be modified except by written consent of both parties, and no verbal conditions, warrants or modifications are valid," and that "It is understood and agreed * * *; (2) Contract not subject to change. No agent or representative has authority to modify or change the terms of this contract." The copy of the contract is followed with averments which allege that, pursuant to its terms, the plaintiff shipped the carload of flour mentioned in the complaint on March 19, 1930; "that the defendants knew and, by virtue of the said agreement hereinbefore set forth, ordered said merchandise by its patent and trade name," and that the terms of the written instrument should estop the defendants from claiming any covenant or warranty not recited in the written instrument or in a subsequent one.

Based upon the verdict of a jury, judgment was entered in favor of the defendants in the sum of $51. After a motion for a new trial had been denied the plaintiff appealed.

ROSSMAN, J. The disposition of the assignments of error will be facilitated by a recital of the following facts: In March of 1929 the defendants, who operate a bakery in Burns, Oregon, became subject to com-

petition and, in order to place themselves in a more favorable position to cope with it, desired to produce a quality of bread superior to their past products. Being informed that Golden Northwest flour would meet their needs, they sent a telegram of inquiry to the manufacturer of that brand of flour and, as a result, one T. W. Brown, a salesman in the employ of the plaintiff, called at their bakery. The plaintiff was the sales agent for Golden Northwest flour, as well as for the mill which produced the flour with which this action is concerned. The defendants gave Brown an order for five carloads of Golden Northwest flour and ordered immediate delivery of one carload. Their experience with this carload was unsatisfactory, and, by common consent, the order for the remaining four carloads was cancelled. At that time Brown interested the defendants in flour produced by the Collins Milling Company, whose products, as well as those of the other mills in the Northwest States, are sold by their trade names. The defendants were then unfamiliar with the trade names and the merits of Collins flour, with the exception of Collins Pastry flour, until Brown spoke to them upon the subject. July 30, 1929, they signed an order for 210 barrels of Collins flour, and in the early part of August this carload was delivered. It was composed of soft wheat flour, with the exception of 90 barrels of a hard wheat flour called Craft flour. The defendants testified that the soft wheat flour produced satisfactory results but that the bread made from the Craft flour was inferior to their previous product. On the other hand, Brown testified that the defendants stated to him that they were well satisfied with the Collins flour. August 25, 1929, the defendants signed the contract mentioned in the reply and reviewed in the statement of facts preceding this

decision. October 23, 1929, the defendants took delivery of one carload containing, among other brands, ten barrels of Collins Best flour, and later paid for it. March 15, 1930, they placed a requisition for delivery of the second car containing, among other brands, 110 barrels of Collins Best flour. It was delivered in the early part of April, and constitutes the specific flour mentioned in the complaint.

The defendants' evidence indicates that the Collins Best flour, after repeated trials in which bakers in the employ of the plaintiff assisted, failed to produce bread equal to that which they had previously baked. Defendants swore that several hundred loaves were entirely unmerchantable, that many of their customers complained of the unsatisfactory quality of the bread, that many of their customers ceased buying their bread, and that while they were using Collins Best flour two stores which had been selling their bread severed relationship with them. Prior to August 25, 1929 (the date of the contract), the defendants had had no experience with Collins Best flour which is a hard wheat flour, although the car purchased on July 30th contained, as we have already stated, 90 barrels of Collins Craft flour. Collins Best and Collins Craft are both made of hard wheat but Collins Best is a longer patent flour, contains more gluten and protein, has a greater fermentation tolerance, and from it the dark grades of material have not been removed.

The evidence clearly showed that before any of the above mentioned flour was purchased the defendants told Brown that their purpose in changing from the brand they were then using was to enable them to produce a better quality of bread so as to cope successfully with their competition, and that price was immaterial.

Brown himself testified that their purpose was "to make a good loaf of bread." In reply to the question, "They were particular about its making a good loaf of bread, weren't they?" he answered, "Yes, sir." At another time he stated: "The Corleys were trying to get a flour that was satisfactory to their purposes." The conditions under which the defendants were operating, such as altitude, limited access to competent help, character of water, etc., were known to Brown. He also was familiar with the kind of flour which the defendants were then using and the price which they were paying for it. One of the defendants testified that before the contract for the nine carloads of flour was signed he told Brown, "We wasn't putting the loaf of bread we should put out. We wasn't satisfied with it, and that our customers wasn't satisfied with it, and that it was at a time we would more than likely have competition and our bread wouldn't go on the market with a good competitor, a good, keen competitor that would put out a good loaf of bread." The witness testified that, after the defendants had experimented unsatisfactorily with Golden Northwest flour and another brand which Brown had suggested, the latter declared, "I have another flour that will, I believe, be just what you want, that will produce the bread that you want to put on the market," and then recommended the Collins products. He testified that after their unsatisfactory experience with Collins Craft flour Brown induced them to insert in the contract the item of 500 barrels of Collins Best by making the following recommendation: "He said, being as that was more natured to the altitude, that that would work, he thought, lots better. He felt sure that would make a loaf of bread." Brown freely conceded that the defendants had never mentioned Collins Best brand until he had recommended it,

and that, so far as he was aware, the defendants were unfamiliar with that brand before signing the contract.

The first and third assignments of error contend that the circuit court erred when its rulings permitted the jury to find that the circumstances of the sale impliedly warranted that the flour sold was suitable for the defendants' announced purposes. These assignments of error are predicated upon eight rulings of that court made during the course of the examination of the witnesses and instructions to the jury. Three of the rulings permitted the defendants to inquire of Brown whether they acquainted him with their purposes before purchasing the flour. The rulings, based upon the instructions, are intended to challenge the court's definition of a warranty, and also its instruction which outlined the circumstances under which an implied warranty of fitness arises when an article is sold by a vendor who knows the purposes to which the buyer intends to apply the thing sold, and is aware of the fact that the buyer is relying upon his skill. The remaining rulings occurred when the court refused to instruct the jury: ''In this case it is admitted that the contract under which the flour in question was sold and delivered was entered into in writing, signed by both the plaintiff and defendant on the 25th day of August, 1929, and you shall, therefore, disregard and not take into consideration any statement of the alleged quality of the flour or its fitness for any particular purpose made at the time of entering into such contract; * * * you are hereby instructed that the contract and sale in this case was what is designated in the law as the sale of an article or commodity by its patent or trade name. In such case there is no implied warranty that the article sold, the flour in this case, is fit for any particular purpose. * * *''

Section 64-315, Oregon Code 1930, constitutes section 15 of the Uniform Sales Act and defines the circumstances under which an implied warranty of quality arises upon a sale of personal property. The first subparagraph of that section states that such a warranty arises when the vendor is aware of the purposes for which the goods are purchased and knows that the buyer relies on his skill. The fourth subparagraph provides that no implied warranty is created when an article is sold under its patent or trade name.

It will be observed from the evidence which we have reviewed that during the negotiations and demonstration bakes which preceded the signing of the contract of August 25, 1929, the plaintiff became well acquainted with the purposes of the defendants in purchasing the flour, and knew that they relied upon its skill. The fact that it possessed expert knowledge of flour and bread-baking was readily apparent—it sold several brands of flour produced by more than one mill, and had in its employ expert bakers. The fact that the defendants relied upon the plaintiff's skill is shown by the fact that, without any previous knowledge, they purchased from the plaintiff several different brands of flour produced by three different mills. The contract was prepared by the plaintiff, and the defendants permitted Brown to insert in it the quantities and brands which he deemed best suited to their needs.

■■ A buyer who asks for an article under its trade name, thereby indicating that he knows what he wants and does not rely upon the skill of the vendor, is not the beneficiary of any warranty except one that demands that the article delivered shall be merchantable and the kind specified: *Mine Supply Co. v. Columbia Mining Co.,* 48 Or. 391 (86 P. 789); *Quema-*

*honing Coal 'Co. v. Sanitary Earthenware Specialty Co.,* 88 N. J. Law 174 (95 Atl. 986) ; *Ivans v. Laury,* 67 N. J. Law 153 (50 Atl. 355) ; *Goulds v. Brophy,* 42 Minn. 109 (43 N. W. 834, 6 L. R. A. 392) ; Williston on Sales (2d Ed.), § 236a. The rule of law just stated is applicable even though the purchaser when buying states the purposes to which he expects to apply the article. But the mere fact that the article happens to have a trade name and is denoted by it in the contract does not exclude all warranties and assign the transaction to subdivision 4 of § 64-315, Oregon Code 1930. To begin with it must first appear that the goods were known in the market among those dealing in that kind of merchandise by its trade name: *Barrett Co. v. Panther Rubber Mfg. Co.,* 24 Fed. (2d) 329; *Universal Motor Co. v. Snow,* 149 Va. 690 (140 S. E. 653, 59 A. L. R. 1174). If the circumstances of the transaction show that the buyer made known to the vendor the purposes for which he desired the article, relied upon the seller's skill and judgment, and that the trade name was inserted in the contract merely for convenience of description, an implied warranty of fitness arises for the protection of the buyer, in the absence of a clause of disclaimer, even in jurisdictions where the Uniform Sales Act has been adopted: *Davenport Ladder Co. v. Edward Hines Lumber Co.,* 43 Fed. (2d) 63; *Barrett Co. v. Panther Rubber Mfg. Co.,* supra; *Wisdom v. Morris Hardware Co.,* 151 Wash. 86 (274 P. 1050) ; *Ireland v. Louis K. Liggett Co.,* 243 Mass. 243 (137 N. E. 371) ; *Bekkevold v. Potts,* 173 Minn. 87 (216 N. W. 790, 59 A. L. R. 1164) ; *Sachter v. Gulf Refining Co.,* 203 N. Y. S. 769; *Universal Motor Co. v. Snow,* supra; *Foley v. Liggett & Myers Tobacco Co.,* 241 N. Y. S. 233. Nothing contained in *Seitz v. Brewers' Refrigerating Co.,* 141 U. S. 510 (12 S. Ct. 46, 35 L. Ed. 837), and *Davis*

*Calyx Drill Co. v. Mallory,* 137 Fed. 332 (69 L. R. A. 973), both being cases upon which the plaintiff especially relies, is out of harmony with the foregoing. In both of those cases the article was not in existence when the parties contracted, and in each instance the party charged with the alleged implied warranty undertook to manufacture the article according to a specific description or specifications. In the Davis Calyx Drill Company case the court said:

"If the purchaser, Mallory, or his agent, Haven, had described the strata through which he desired to drive the drill, and had ordered the Calyx Company to make or to select and furnish to him a drill that would bore the desired holes through these strata as rapidly and economically as a diamond drill, for an agreed price, and the plaintiff had accepted the order, an implied warranty would have arisen."

These two cases are instances of a buyer who trusted to his own judgment and ordered the article by its trade name, although in the Seitz case he disclosed the purposes for which he desired the article.

■ Such being the law, it follows that, in our opinion, the circuit court did not err when it overruled the plaintiff's objections to the questions which, upon cross-examination, inquired of Brown what statements had been made to him by the defendants declaring the purposes for which they wanted the flour and indicating the defendants' reliance upon the plaintiff's skill. Reverting to the excerpts of the requested instructions quoted above, it will be observed that they are in direct conflict with the above principles of law, and therefore the circuit court did not err when it declined to subscribe to them. The instructions given by the court, and which the plaintiff criticizes on appeal, are not, in our opinion, subject to review. The transcript of the

trial does not note any exception to them, and the bill of exceptions, after dividing into paragraphs those portions of the instructions which enunciate the principles of substantive law and state the rules governing the measurement of damages, follows each paragraph with the statement, "to which instruction the plaintiff has filed its exception," but does not point out the error which the plaintiff believed existed. The necessity of being specific and of pointing out to the trial judge the alleged defects in his instructions which the objecting party proposes to argue before this court has been many times recognized: *Blanchard v. Makinster,* 137 Or. 58 (290 P. 1098, 1 P. (2d) 583); *Lott v. De Luxe Cab Co.,* 136 Or. 349 (299 P. 303); *Michelin Tire Co. of California v. Williams,* 135 Or. 158 (293 P. 938); *Wallace v. American Toll Bridge Co.,* 124 Or. 179 (264 P. 351) (authorities reviewed); *Reimers v. Pierson,* 58 Or. 86 (113 P. 436). Since the appellant failed to call to the notice of the circuit court the alleged errors pressed upon our attention, we hold the exception defective and decline to consider it.

█ A conclusion that an implied warranty was available to the defendants does no violence to the Parol Evidence Rule. Warranties of that kind are never in writing, are not created by a meeting of the minds of the parties, and do not constitute any portion of the contractual elements of the agreement, but are a product of the law operating upon the circumstances of the sale: 24 R. C. L., Sales, p. 178, § 451, and 55 C. J. Sales, p. 715, § 701. The disclaimer clause of the contract merely excludes attempted verbal amendments and modifications arising from the agreement of the parties and, hence, does not affect an implied warranty. Such clauses are "intended to say that no contractual warranties have been made": *Bekkevold v.*

*Potts,* 173 Minn. 87 (216 N. W. 790, 59 A. L. R. 1164). Since the contract contains nothing at variance with the aforementioned implied warranty, its terms do not negative and, therefore, exclude it: Williston on Sales (2d Ed.) 239. See also *Bekkevold v. Potts,* supra. Evidence establishing disclosure of purpose and the buyer's reliance upon the seller's skill is not received for the purpose of varying the terms of a contract, but to establish the implied warranty: *Barrett·Co. v. Panther Rubber Mfg. Co.,* 24 Fed. (2d) 329.

We, therefore, conclude that the first and third assignments of error are without merit.

■■■ The plaintiff argues that the language to which the defendants point as a foundation for the alleged implied warranty is nothing more than dealers' talk, and that Brown's assurance that the flour would make ''good bread'' was merely the expression of an opinion incapable of creating a liability. Implied warranties do not arise out of the mere expression of an opinion (*Washburn-Crosby v. Kindervatter,* 147 App. Div. 114 (131 N. Y. S. 871); *DeZeeuw v. Fox Chemical Co.,* 189 Iowa 1195 (179 N. W. 605) nor out of the seller's loose talk: *Maggioros v. Edson Bros.,* 164 N. Y. S. 377; *Worth v. McConnell,* 42 Mich. 473 (4 N. W. 198). The principles just stated have found expression in our statutes: section 64-312, Oregon Code 1930. We are of the belief, however, that Brown's assurances to the defendants amounted to something more than dealers' talk. The parties were earnestly trying to find a brand of flour which would serve the defendants' purposes. If the word ''good'' stood alone the plaintiff's contentions would possess more merit than they now do. However, the courts have frequently found in that word a definite meaning. See the instances cited in 28 C. J., p. 713, and in the three

series of Words and Phrases under the title Good. But the word "good" does not stand alone; the conversation of the parties assigns to it a definite meaning: *Goss v. Turner*, 21 Vt. 437, and *Hutchison v.* Bowker, 5 M. & W., 535 (151 Eng. Rep. 227). The defendants stated to the plaintiff that they were anxious to make a merchantable loaf of bread which would be better than their past products and of such excellent quality that they could cope with their competition. In addition, the various demonstration bakes performed by the plaintiff's bakers in defendants' bakery showed clearly to the plaintiff the precise kind of a loaf which the defendants wanted to produce. Moreover, it is apparent from the language employed by bakers and flour salesmen called to the witness stand by the plaintiff when testifying that the word "good" possesses a specific meaning, for those witnesses employed it many times in reference to bread and flour; for instance, one J. E. Snipes, an expect chemist and baker, produced by the plaintiff, testified thus: "For that reason the mills do not give an unqualified guaranty to make good bread. There is no flour of any miller, I think, on the Pacific Coast that won't make good bread." We, therefore, reject the contention that Brown's declarations amounted to nothing but dealers' talk and that the word "good" is too indefinite in meaning to support the defendants' claims.

The fourth assignment of error presents for consideration the rules governing the measurement of damages. This assignment is based upon (1) an attempted exception to those portions of the circuit court's instructions wherein it stated the rules applicable to the allowance of damages; (2) exceptions to the refusal of the court to give to the jury four instructions requested by the plaintiff; and (3) the

court's action in overruling objections of the plaintiff to questions addressed to the defendant M. H. Corley which inquired concerning loss of business during the several days when the bakery was using Collins flour. The instructions of the court outlined the rules governing the recovery of damages in harmony with the principles enunciated in *Barrett Co. v. Panther Rubber Mfg. Co.*, supra; *Blanchard v. Makinster*, supra; *American Oil Co. v. Foust*, 128 Or. 263 (274 P. 322; *Martin et al. v. Neer*, 126 Or. 345 (269 P. 342); and *Feeney & Bremer Co. v. Stone*, 89 Or. 360 (171 P. 569, 174 P. 152). The alleged exceptions to those portions of the instructions are expressed in the same words quoted above whereby the plaintiff sought to save exceptions to other portions of the charge; that is, the exception merely states "to which instruction the plaintiff has filed its exception." For the reasons already explained, we decline to consider these alleged errors. The requested instructions are based upon the following provision of the contract:

"If the seller shall fail to make shipment in accordance with the terms and conditions of this contract the buyer may, upon notice to the seller by telegram or letter addressed to the seller's home office, exercise either of the following options, C, D, or E, with the understanding and agreement that the seller shall not be responsible for failure to ship according to the terms and conditions of this contract where such failure is caused by any fires, strikes, labor difficulties, failure of carriers to furnish facilities or other acts of carriers or other causes beyond the control of the seller."

We are of the opinion that this paragraph of the contract does not mean that if the seller should breach an implied warranty of fitness the measure of compensation provided by the contract should govern, but

that it was intended to specify the sum payable if the seller should fail to ship within the times and in the manner stated in the contract. Being of this opinion, we conclude that the court did not err when it declined to subscribe to the requested instructions. The questions propounded to Corley, and to which the plaintiff saved an exception, brought forth precise data showing loss of sales and loss of profits resulting from the use of this flour. The precedents last cited justified the court in overruling plaintiff's objections. It follows that, in our opinion, these assignments of error are without merit.

The fifth assignment of error is predicated upon an attempted exception and instruction which mentioned the right of rescission possessed by a buyer to whom defective merchandise is delivered, and who acts promptly. The defendants had testified that when they discovered the fact that the flour was defective they notified the plaintiff and told it where the flour was stored so that it could assume possession. The exception to this instruction was expressed in the same words as previously quoted. For reasons already stated, we hold that this charge is not subject to review.

Under the sixth assignment of error the plaintiff argues that its motion for a directed verdict should have been allowed. It argues that the warranty, if any, was an express one, as distinguished from an implied one, and that the evidence failed to prove that the damages which the defendants sought were the result of the alleged defective quality of the flour. The evidence indicates that various factors are capable of producing bad results in bread-baking; for instance, yeast, temperature, altitude, acid condition of milk, etc. Certainly, the doctrine of implied warranty can not be so

far stretched that it will guarantee the buyer's satisfaction under all possible conditions of use. Accordingly, this doctrine did not assure the defendants satisfaction if they failed to do their part. But the evidence discloses no neglect of the defendants. When Brown assured the defendants that Collins products would produce the desired results he was familiar with the local conditions under which they operated. In fact, he himself had had charge of some demonstration bakes in the defendants' plant. The defendants and their witnesses testified that when expert bakers in the employ of the plaintiff undertook to make bread out of Collins flour in the defendants' plant the resulting loaves of bread were unmerchantable, and that Brown so admitted. It may be that this testimony was untrue, but the jury's favorable consideration of it renders it impossible for us to ignore it. Such being true, the defendants supplied testimony which indicates that the proximate cause of the damages sought was the plaintiff's breach of the implied warranty. We are of the opinion that the evidence, if believed, established an implied warranty as distinguished from an express one. It may be that the decline in price of flour which occurred shortly after the contract was signed was the circumstance which induced the defendants to refuse to accept further shipments. But this testimony, like the rest of the evidence, was for the consideration of the jury. We, therefore, conclude that this assignment of error discloses no cause for reversal. Although we hold that the motion for the directed verdict was properly denied, our action in so doing should not be deemed a conclusion upon our part that the products of the Collins Milling Company possessed no merit. The jury apparently found that they were unsuited to the defendants' needs, and we are bound by that result.

Since the appeal has disclosed no error in the record, it follows that the judgment of the circuit court is affirmed.

BEAN, C. J., BROWN, RAND, CAMPBELL and KELLY, JJ., concur.

BELT, J., did not participate.

---

## ON MOTION TO RETAX COSTS
### (14 P. (2d) 455)

█ ROSSMAN, J. The appellant moves to strike from the respondents' cost bill the following item: "Copy Transcript of Testimony........$43.05." It appears from the record that the appellant filed with the clerk of this court the transcript of the testimony, and discharged in full all expenses incidental thereto. The affidavits accompanying the aforementioned motion indicate that subsequently respondents' attorneys procured a copy of the transcript of the testimony for their convenience. Based upon *Bell v. Spain et al.,* 110 Or. 114 (222 P. 322, 223 P. 235), and *Cunningham v. Friendly,* 76 Or. 16 (147 P. 752), which hold that only the expense of obtaining the original transcript of testimony filed with the clerk of this court constitutes a taxable expense, the motion to strike the above item from respondents' cost bill is allowed.

BEAN, C. J., BROWN, RAND, BELT, CAMPBELL and KELLY, JJ., concur.