## BUCHANAN v. DUGAN.

No. 1085.

Municipal Court of Appeals for the District of Columbia.

Argued July 9, 1951.

Decided July 31, 1951.

Rehearing Denied Aug. 21, 1951.

Foster Wood, Washington, D. C., with whom Helen V. Dolan, Washington, D. C., was on the brief, for appellant.

Richard S. T. Marsh, Washington, D. C., with whom Rufus E. Stetson, Jr., Washington, D. C., was on the brief, for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiff bought from defendant a hearing aid and several months later, claiming that it did not accomplish the purpose for which it was purchased, rescinded the sale and sued to recover the purchase price. The trial judge, sitting without a jury, awarded her judgment and defendant prosecutes this appeal.

Plaintiff, who has had trouble with her hearing since she was a small child but had never used a hearing aid before, informed defendant, a dealer in hearing aids with nearly twenty years experience in such work, that she needed a hearing aid for groups and meetings and classes in connection with her work to make conversations more distinct. She made it clear that her need was not for increased volume. Before calling upon defendant, she had visited the Washington Hearing Society whose consultant, after trying four or five earphones, recommended the particular aid and model which was subsequently purchased. Defendant, at her own suggestion, conducted independent tests of plaintiff's hearing to see if the make and model prescribed was the proper one and finally sold this particular model as being

exactly the right one to accomplish plaintiff's purposes. Plaintiff requested that she be permitted to try the instrument at her work, offering to pay for its use, but this request was refused.

Defendant made the statement, "You will be able to make out the conversations with this hearing aid. * * * You do not need much volume, you need distinctness. This will make it more distinct." Defendant "guaranteed" the instrument sold would get the results plaintiff needed. The model selected was sold under a trade name. Plaintiff was told by defendant that it would take some time for her to become accustomed to the use of a hearing aid and, therefore, upon discovering that the instrument completely failed to accomplish her purpose, she returned twice to the seller for adjustments and instructions and continued to use it until the batteries wore out. Still noting no improvement in her hearing, she tendered the instrument back to the seller. Plaintiff's testimony was that the instrument added to volume but not to distinctness. Defendant denied making the representations testified to by plaintiff, but in view of the finding of the trial judge we must accept plaintiff's version. No objection was made at the trial to the admission of the testimony regarding conversations between the parties.

The purchase price was paid in full at the time of delivery, which was on plaintiff's fourth or fifth visit to defendant. There was received in evidence a "purchase order" on a printed form for the hearing aid, which was signed by plaintiff as buyer on the day of the purchase and also signed as "accepted by" the seller. This "purchase order" contained certain "privileges" to the effect that the buyer within thirty days could "request" substitution of certain parts. It also contained the statement, "I have examined the Radioear hearing aid described herein and it is new and satisfactory. I have no understanding, verbal or written, which shall in any way modify or amend the effect of this order."

An ear specialist who examined plaintiff shortly after the purchase of the hearing aid testified that she was completely deaf in one ear but that without a hearing aid she could hear low tones and men's voices across a room but could not hear women's voices and higher musical notes. He gave it as his expert opinion that no hearing aid could help the plaintiff because of the nature of her hearing impairment.

The trial judge found as a fact that plaintiff made known to the defendant the purpose for which she wanted the hearing aid before she entered into any negotiations and relied upon defendant's judgment and experience and statements in making the purchase, that the hearing aid never accomplished the announced purpose for which plaintiff purchased it and that its failure was not due to any lack of co-operation on the part of plaintiff, and that the provisions in the written purchase order were insufficient to limit or waive defendant's liability or to release defendant from any obligation which she would otherwise have under the law.

The principal assignment of error made by defendant-appellant is that the trial court erred in finding that the written purchase order was insufficient to limit or waive her liability. She argues that oral representations made by her can not be permitted to vary the terms of the purchase order signed by the parties.

Assuming that the purchase order contained enough material elements of the transaction to constitute a contract between the parties, we hold that the existence of this writing did not act as a bar to the introduction and consideration of evidence establishing an implied, as distinguished from an express, warranty that the hearing aid was suitable for plaintiff's needs. Code 1940, section 28–1115 embodies section 15 of the Uniform Sales Act which defines the circumstances under which an implied warranty of quality or fitness arises upon the sale of personal property. Subsection (1) of this section provides that where a buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment,

there is an implied warranty that the goods shall be reasonably fit for such purpose. In the case at bar defendant became fully acquainted with the purposes and needs of the plaintiff in purchasing the hearing aid and must have realized that plaintiff was relying on defendant's skill and judgment in prescribing, selecting, and furnishing an instrument which would give "distinctness" in tone rather than "volume".[1] The trial court so found and there is ample evidence to sustain this finding.

■ Defendant contends that since the hearing aid was sold under its trade name a different subsection of this same section is the governing provision. Subsection (4) of section 28–1115 provides that in the contract of sale of a specified article under its patent or trade name, there is no implied warranty as to its fitness for any particular purpose. But the mere fact that the article happens to have a trade name and is so designated in the contract does not automatically bring the contract within the provisions of this subsection. An implied warranty of fitness for the buyer's particular purpose is not excluded if the buyer, when she discloses to the seller that purpose, relies on the seller's skill and judgment to furnish the appropriate article and the seller then selects an article which has a patent or trade name.[2] Here the plaintiff relied not upon the trade name of the instrument but upon the selection made by defendant and the latter's judgment as to the results that could be obtained by its use.

■ In the "purchase order" which plaintiff signed, she stated: "I have no understanding, verbal or written, which shall in any way modify or amend the effect of this order." Defendant contends that evidence of any representations extrinsic to the agreement should thereby be excluded. But this provision does not have the effect which the defendant would attribute to it. While it is possible for parties in a contract of sale to exclude by a merger clause any implied warranty,[3] a reading of the particular clause here indicates that such was not its intended effect. It excludes attempted verbal or written amendments and modifications arising from an agreement of the parties. Such would not exclude an implied warranty. "Warranties of that kind are never in writing, are not created by a meeting of the minds of the parties, and do not constitute any portion of the contractual elements of the agreement, but are a product of the law operating upon the circumstances of the sale."[4] Therefore, if it had been intended to exclude such a warranty, it was incumbent upon the parties to so state in the contract.[5] Evidence establishing disclosure of purpose and the buyer's reliance upon the seller's skill is not received for the purpose of varying the terms of a contract, but to establish the implied warranty.[6]

■ Defendant also urges that at most defendant's statements to plaintiff constituted mere expressions of opinion or belief and did not amount to representations of fact. But we hold that the trial judge in

1. Davenport Ladder Co. v. Edward Hines Lumber Co., 8 Cir., 43 F.2d 63; Barrett Co. v. Panther Rubber Mfg. Co., 1 Cir., 24 F.2d 329; Universal Motor Co. v. Snow, 149 Va. 690, 140 S.E. 653, 59 A.L.R. 1174; 1 Williston Sales, § 235 (Rev. ed. 1948); see Griffith-Consumers Co. v. Noonan, 78 U.S.App.D.C. 32, 136 F.2d 271.

2. Davenport Ladder Co. v. Edward Hines Lumber Co., supra; J. A. Campbell Co. v. Corley, 140 Or. 462, 467, 13 P.2d 610; Universal Motor Co. v. Snow, supra; Annotations: 59 A.L.R. 1180, 90 A.L.R. 410.

3. Bekkevold v. Potts, 173 Minn. 87, 216 N.W. 790, 59 A.L.R. 1164; Ross v. North-

rup, King & Co., 156 Wis. 327, 144 N.W. 1124; Oldfield v. International Motor Co., 138 Md. 35, 113 A. 632; 1 Williston, Sales, § 239 (Rev. ed. 1948).

4. J. A. Campbell Co. v. Corley, supra [140 Ore. 462, 13 P.2d 614]; see Bekkevold v. Potts, supra.

5. Bekkevold v. Potts, supra; Hooven & Allison Co. v. Wirtz, 15 N.D. 477, 107 N. W. 1078; J. B. Colt Co. v. Bridges, 162 Ga. 154, 132 S.E. 889.

6. Barrett Co. v. Panther Rubber Mfg. Co., supra; J. A. Campbell Co. v. Corley, supra; 3 Williston, Contracts, § 643 (Rev. ed. 1936).

the present case was entitled to hold that the representations made by defendant were more than mere expressions of opinion. In stating that the hearing aid would provide the particular results plaintiff needed, defendant mentioned that she had been engaged in the business for nearly twenty years and had herself experimented with hearing aids. Plaintiff had never used a hearing aid before. These statements tend to support a finding of reliance by the plaintiff on further statements by the defendant as to the adaptability of the instrument to her particular purpose.[7] Such representations, when made in connection with matters of health, have been held to be material when accompanied by a claim of particular knowledge and training.[8]

We do not believe that anything contained in Seitz v. Brewers' Refrigerating Mach. Co., 141 U.S. 510, 12 S.Ct. 46, 48, 35 L.Ed. 837, upon which defendant strongly relies, is contra to the foregoing. That decision, decided many years prior to the adoption of the Uniform Sales Act, held that in the absence of a presumptive and justifiable reliance by the buyer on the judgment of the vendor rather than his own, the "purchase of a specific article, manufactured for a particular use, and fit, proper, and efficacious for that use, but in respect to the operation of which, in producing a desired result under particular circumstances, the buyer found himself disappointed", carried with it no implied warranty of fitness for the buyer's particular use. In the case at bar the trial court found that there was justifiable reliance by the plaintiff on the selection made by the defendant who represented that the in-

strument would fit the special purpose demanded by the plaintiff.[9]

While it is not necessary for a decision of this case, we feel that some comment as to the legal and evidentiary effect of this "purchase order" should be expressed. Defendant contended that it is a complete contract between the parties and we so assume for the purposes of our decision. However, the paper resembles to a great degree nothing more than a mere receipt. While it purported to be an order which was accepted by defendant, it was marked "Paid in full—thank you" and executed on the same day that the purchase was made and the hearing aid delivered. The only part of the "order" which might be said to resemble an executory contract were the statements of "privileges" which the buyer might request. Receipts, so far as they do not involve contractual elements, do not come within the parol evidence rule.[10] Therefore, if the writing is so construed, it would follow that evidence of an oral express warranty made by the defendant as to the fitness of the aid for plaintiff's particular purpose could properly have been considered.[11]

The remaining assignments of error made by defendant, that the plaintiff waived her right to rescind the contract by retaining possession of the instrument several months after the purchase, and that the finding of the trial court was contrary to the weight of the evidence, were questions clearly within the purview of the trier of the facts, and we hold that the findings of the trial judge were amply supported by competent evidence.

Affirmed.

7. Hercules Powder Co. v. Rich, 8 Cir., 3 F.2d 12, certiorari denied 268 U.S. 692, 45 S.Ct. 511, 69 L.Ed. 1160.

8. Hedin v. Minneapolis Medical & Surgical Inst., 62 Minn. 146, 64 N.W. 158, 35 L. R.A. 417; Haarstad v. Gates, 107 Minn. 565, 119 N.W. 390.

9. Hercules Powder Co. v. Rich, supra; Universal Motor Co. v. Snow, supra; see J. A. Campbell Co. v. Corley, supra.

10. Offutt & Blackburn v. Doyle, 135 Ky. 296, 122 S.W. 156; Annotation 56 A.L.R. 13, 109.

11. See V. Valente, Inc. v. Mascitti, 163 Misc. 287, 295 N.Y.S. 330; Putnam v. McDonald, 72 Vt. 4, 47 A. 159; 3 Williston, Contracts, § 643 (Rev.ed.1936).